Robinson v. Robinson.

3. —— failure to return transcript.

Reversed.

ROBINSON *et al.* v. ROBINSON *et al.*

1. Trust: IMPLIED OR RESULTING. Where land is purchased by one with money belonging to another, an implied or resulting trust arises in favor of the latter.

2. —— GUARDIAN AND WARD. Where it clearly appears that a guardian received money belonging to his wards, and delivered the same over to their father, who invested it for their benefit in certain lands, taking the

title in his own name, the father will be treated as holding the.same in trust for said wards, and it will not be subjected to the judgment of a creditor, rendered against the father after such purchase but upon a debt contracted by him before.

3. —— WARDS MAY ELECT. Where a guardian, without authority, parts with money belonging to his wards, and consents to its investment in real estate, the title to which is taken in the name of another, the wards may elect to follow the money into the land, or to repudiate the act of the guardian and hold him responsible therefor.

4. Evidence: DECLARATIONS OF DECEASED TRUSTEE. Evidence of the declarations of a deceased person in whose name the title to certain real estate was taken in trust for his children and purchased with money belonging to them, made at the time of the investment, which were against his interest, in disparagement of his title and explanatory of the character thereof, is admissible in a proceeding to establish the trust in favor of the children.

*Appeal from Des Moines District Court.*

SATURDAY, JUNE 29.

PLAINTIFFS are the children and heirs of A. S. and Jane A. Robinson. Their mother was the daughter and one of the heirs of William Woods. The grandfather died in 1854, the mother in 1852, and the father in 1858. The defendant, M. W. Robinson, is the administrator of the estate of A. S. Robinson. His co-defendant, Sterritt, recovered a judgment against said administrator, in October, 1862, for near $2,900, upon a debt contracted *before* the purchase of the land as hereinafter stated. The bill alleges that the grandfather (Woods) left a valuable estate; that plaintiffs became entitled to the share of their mother, amounting to some $2,165, which their guardian, James Robinson, realized as follows: April, 1855, $1,084; January, 1856, $60.41; April, 1856, $1,000; November, 1857, $20.72. That this money was invested by their father, at the request and with the consent of the guardian and all the relations, in certain real

estate in Des Moines, Polk, Jasper, Story and Boone counties, in this State. All the lands, except those in Des Moines county, were purchased of the government in 1855. The farm in Des Moines county was purchased in November, 1856. One-half of all these lands belonged to James Robinson, but the title was taken in the name of the father, A. S. Robinson. The wild lands cost $582, and the contract price for the farm was $4,000, making the half now claimed by plaintiffs, $2,291. For the farm one-third was paid down, and notes given by the father on one and two years' time for one-half of the balance. It is claimed that the title was taken in the father's name to avoid delay and expense in conveying the same, in case it should be deemed advisable to sell; that plaintiffs' money was intentionally invested in said lands for their use, and that they were held in trust for them by their said father. The age of the several plaintiffs nowhere appears, but that they were under age at the time these lands were purchased is undisputed. Sterritt recovered his judgment in 1862. It was filed in the County Court in February, 1863. An appeal was taken by the administrator to this court, and the judgment here affirmed in December, 1864. The bill in this case was filed in January, 1865. The administrator makes no defense. Sterritt answers, denying the trust, insisting that the lands belong to the father's estate, and prays for execution, etc. Upon the hearing the bill was dismissed, the prayer of the answer granted, and plaintiffs appeal.

*J. C. & B. J. Hall* for the appellants.

I. To the point that a resulting or implied trust may be established by parol, cited *Noel* v. *Noel*, 1 Iowa, 423; *McCoy* v. *Hughes*, 1 Green., 370; *Sullivan* v. *McLennans*, 2 Iowa, 437; *McLennans* v. *Sullivan*, 13 Id., 526;

*McGregor* v. *Gardiner*, 14 Id., 343 ; *Cooper* v. *Skeels*, 14 Id., 580 ; *Nelson* v. *Worrell*, 20 Id., 469.

II. The declarations of the deceased trustee, A. S. Robinson, are competent evidence to show that he held the land in trust for the plaintiffs, as much as if he had put them into the form of writing, as a deed or declaration of trust.

1. Because he is dead, and they were against his interest. *The County of Mahaska* v. *Ingalls*, 16 Iowa, 82 ; 1 Phill. Ev., 293, 926 ; 1 Greenl. Ev., §§ 189, 290.

2. Because in disparagement of his own title. 1 Greenl. Ev., § 109 and notes.

3. Because defendant, so far as he has any right in the premises, is a privy of the decedent. 1 Greenl. Ev., § 189 and notes.

*Tracy & Newman* for the appellee.

I. The burden of proof is upon the plaintiffs to show that their father, A. S. Robinson, held the title to the lands *in trust for them ;* and to establish such a trust their proof must be clear, satisfactory and conclusive, and not made up of loose and random conversations. *Gardiner et al.* v. *Weston et al.*, 18 Iowa, 533 ; *Noel* v. *Noel*, 1 Id., 423 ; *Ratiff* v. *Ellis*, 2 Id., 59.

II. The testimony by which the trust is sought to be established in favor of the plaintiffs in this case consists chiefly of declarations or statements of A. S. Robinson, made to his brothers *after the purchase of the Coats farm.* Such declarations are not competent evidence to prove a trust—they are simply narratives of past events and cannot be received in evidence. 1 Greenl. Ev., 155, § 110.

III. James Robinson, as the guardian of the plaintiffs, had no legal authority to part with their money and con sent that their father might use it or invest it in real.

estate ; they must look to their guardian for their money, and if the money is not forthcoming at their majority, they have a full and adequate remedy against their guardian and his bondsmen. Purdon's Digest, 810, § 14.

WRIGHT, J.—There is but little, if any, controversy as to the law of this case. The rule is not denied, that if

1. TRUST: implied or resulting.

land is purchased by one, with money furnished by another, an implied or resulting trust arises, and the former becomes a trustee for the latter. It is also conceded that the party setting up the trust in such case has the burden of proof, and that he must establish it by evidence which is clear, satisfactory and conclusive, and not by loose and random conversations.

Guided by these rules, we have only to inquire, for the present, whether the trust is established. In view of

2. —— guardian and ward.

the conclusion reached by the court below, we have examined and re-examined the evidence with the utmost care; and still cannot resist the conviction that plaintiffs have abundantly sustained every material allegation of their bill. Indeed, if a trust of this nature ever can be sufficiently established, it is done in this instance. The guardian testifies most clearly to the arrangement, and he is supported by several other witnesses, including the persons who received the money from the father and who entered the wild lands. That the guardian did receive so much money for his wards, and that he handed it to the father, are facts about which there can be no dispute. The father was then in good circumstances, engaged actively in trade in the West. And that the guardian, the father, and all the relations, understood that this money was to be used, and was, in fact, invested for the use and benefit of the children in these lands, there can scarcely be a doubt, if we can

believe human testimony. It was talked of, not once
nor casually, but at different times, the arrangement
being well and repeatedly understood. The father spoke
often of executing the trust. At one time he was about
to make the deed, but was prevented by illness from
carrying out his purpose. And any possible argument
against plaintiffs, growing out of such failure, is met by
the important thought that they were minors; that they
would take the estate at all events by inheritance, and
hence, neither they nor their friends would be apt to
realize so strongly the necessity of a conveyance by the
father. Then, again, Sterritt did not give nor extend
credit to the father, upon the belief that he was the real
owner of these lands. At least, we know the debt was
contracted before they were purchased, and there is noth-
ing to show that he extended the time or delayed the
collection of his claim, relying upon such ownership.
The case is, therefore, relieved of this difficulty. He
stands as a judgment creditor, and it is a contest between
him (the debt arising, as we have already stated) and
those who claim to have the whole equitable right to
lands upon which his judgment is an apparent lien. If,
in fact, the theory of plaintiffs is correct, then their rights
are paramount. There is nothing in the circumstances
to estop them from asserting their equities.

The witnesses seem to be candid, unbiased and intelli-
gent. There is no conflict, but without hesitation or
doubt, they detail clearly and with great consistency, the
transaction as it took place; fully and completely sustain-
ing plaintiffs' case. The conversations were not loose and
random, but it was deliberately understood, when the guar-
dian handed the money to the father, and when the father
bought the land, or handed the money to others to invest,
that it belonged to the children, and was being inves-
ted for their use. There is no testimony that he was then

Robinson v. Robinson.

so involved as to induce him to thus cover up his property. And, in a word, we repeat, that if the trust relation is not established in this instance, it would be almost impossible to establish it in any. And after giving to the rule relied upon by defendant's counsel that the proof should be clear, satisfactory and conclusive (a rule which, I may be allowed to say, I have been inclined to enforce to the letter) we say, giving to this rule due weight, and all that can be claimed for it, we feel constrained to hold, that the court below erred in dismissing this bill.

One or two minor matters demand attention. Appellee insists that the guardian had no right to part with this 3. —— wards money, and consent to its investment in this may elect. manner; that the wards must look to him for their money. In our opinion they might do so; but at their election, they can follow the money into these lands. They might repudiate or ratify the act of the guardian. They have chosen to do the latter, and this was clearly their right.

The suggestion that the trust is not established, because shown, for the most part, by the declarations of the father, 4. EVIDENCE: made after the purchases, and that they are, declarations of deceased therefore, no more than a narration of a past trustee. occurrence, is not supported by the record. Nor is the rule to which appellee refers (1 Greenl. Ev., § 110), applicable to the case before us. The author is there treating of hearsay evidence. Here the witnesses testify to what the father said at the time he made the investment, as also to his admissions and conversations afterward. His declarations were in disparagement of his title; explanatory of the character thereof; were against his interest; he was no longer living; and upon no ground can it be claimed that the testimony was inadmissible.

If the plaintiffs are to be treated as holding (in equity)

VOL. XXII.—55

Robinson v. Robinson.

all the wild lands (a matter not entirely clear from the record), then the father invested, including interest on the deferred payments for the farm, about $2,700, or some $535 more than he received from the guardian. If one-half the wild lands belonged to, and were purchased for their uncle, James Robinson, their guardian, then the excess of the investment would be about $245. And this, in connection with the fact that the father obtained time for two-thirds of the farm purchase, though he had before then received the money from the guardian, are urged by appellee as strong circumstances against plaintiffs' case. We admit their force; but two or three considerations may be suggested to relieve their supposed controlling effect. The witnesses testify that the father was then in good circumstances, and that an advance to his children, even to the largest amount, would not have been unwarrantable, nor to the apparent prejudice of his creditors. Then, again, excluding interest on the deferred payments, the excess would have been but about $125. He paid but six per cent; and if he is charged with ten per cent for the money in his hands (and all the witnesses testify that money was really worth that), the difference would be greatly diminished. Then, he received, for several years, the rents and profits of the farm. So that, taking all the facts into account, we think the case is relieved of the difficulties suggested; and especially so, as plaintiffs were minors, and the father seems to have acted with the honest purpose of investing his children's money, money received from their maternal grandfather, with no thought or purpose of defrauding any one.

Reversed.