KERMIT EHLINGER et al., appellants, v. CHRISTINE EHLINGER, individually and as executrix of estate of Chris Ehlinger, deceased, appellee.

No. 50449.

NOVEMBER 14, 1961.

Mossman & Mossman, of Vinton, for appellants.

Bordewick & Fischer, of Vinton, for appellee.

SNELL, J.—A lack of evidence and a shortage of competent witnesses may be a serious handicap in a lawsuit. Plaintiffs' case, conceived in natural disappointment, languishes in frustration and founders for failure of proof.

Bertha Ehlinger, the wife of Chris Ehlinger and the stepmother of Kermit Ehlinger, Gladen Ehlinger, later known as Jack Ehlinger, and Ormen Ehlinger, plaintiffs and appellants, died testate on April 30, 1944. Her estate was probated in Benton County, Iowa. None of plaintiffs was at that time residing in Iowa.

At the suggestion of the attorney for the estate and at the request of their father, plaintiffs executed a power of attorney authorizing their father to represent them in all estate proceedings. Chris Ehlinger, plaintiffs' father, elected to take his distributive share of the estate and not under the will.

In the proceedings to set off his distributive share, certain properties were sold to Chris Ehlinger. All except one of these properties were later sold by Chris. Under his power of attorney Chris Ehlinger, on April 6, 1945, assigned all the interest of Kermit, Gladen and Ormen to Chris Ehlinger and on the same date, as assignee, filed a receipt for their distributive shares in the estate. The estate was closed on April 26, 1945.

In 1946 Ormen Ehlinger and Gladen (Jack) Ehlinger, two of the plaintiffs, purchased from their father a plumbing business for approximately $2000 less than its value. Exhibits received in evidence show notes executed to the father from time to time and receipts showing payment. There are bank deposit slips showing deposits by Chris Ehlinger for the sons and checks to and for them. Checks indicate that twice Chris furnished the money to settle collection suits against Ormen. These exhibits indicate that the father at that time was a creditor rather than a debtor of his sons.

In 1946 Chris Ehlinger married the appellee, Christine Ehlinger. Prior thereto they executed an antenuptial agreement whereby Christine waived any interest in the estate of Chris Ehlinger. Also prior to his marriage Chris executed warranty deeds to his property to his sons. The deeds were left for safekeeping in the office of his attorney. There has never been any delivery of the deeds.

On September 18, 1957, Chris Ehlinger executed his Last Will and Testament. In it he mentioned his prenuptial agreement and then said, " 'However, our marriage in the past years has been very pleasant, and she has been very kind to me, and I now give, devise and bequeath to her all of my property, both real and personal, wherever the same may be situated, the same to be hers absolutely.' "

This reference to his wife was in accord with statements to his attorney at the time, that "he had been very happy with her during the last twelve years or during the years he married her. She had been very kind to him, and he wanted her to have all of his property."

Chris Ehlinger died March 12, 1959. His will has been admitted to probate. His sons, plaintiffs herein, being disap-

pointed by the loss of a hoped-for inheritance, brought this action claiming their father became a trustee of their share of the Bertha Ehlinger estate and that a constructive trust devolved upon property purchased with trust funds.

The trial court held there was a failure of proof. We agree.

I. In addition to written exhibits, plaintiffs offered oral testimony. Here the curtain falls in front of oral testimony of plaintiffs. Of the plaintiffs, only Ormen Ehlinger appeared as a witness. Over objection as to his competency under the dead man statute, section 622.4, Code of Iowa, he attempted to tell of conversations, explain transactions and relate statements and assurances of his father. He was not a competent witness for that purpose.

So many cases have discussed and so many articles have been written on the dead man statute that extended analysis is unnecessary here. It is sufficient to note that the witness was a party to the action, interested in the event thereof, attempting to testify to personal transactions and communications with a person deceased at the time of trial and against the executrix and devisee of the deceased person.

The witness was incompetent under the statute and his testimony offered in the face of the objection cannot be considered.

Nelson v. Nelson, 245 Iowa 1225, 1229, 1230, 65 N.W.2d 154, 156, involved a controversy between the administrators of the decedent's estate and the farm tenant of the decedent. The tenant attempted to testify as to oral agreements with the decedent. The court said:

"Under the dead man statute, section 622.4, Code of Iowa, 1954, defendant was incompetent to testify to any personal transaction or communication between himself and decedent. Defendant's testimony was taken subject to standing objections to his competency under Code section 622.4, * * *.
"* * *

"The objections to the competency of defendant to testify to these and like matters were clearly valid. Upon this point no citation of authorities is necessary. Nor were these objections waived by the cross-examination of the defendant upon

the propositions to which he had theretofore testified. [Citations] Hence, such testimony should be disregarded."

In Bell v. Pierschbacher, 245 Iowa 436, 446, 62 N.W.2d 784, 790, the plaintiff testified, over objection to his competency, " 'During that time * * * I did not receive any compensation for my work upon the Bell farm.' " The court held that he was vulnerable to the objection, stating, "A witness testifies to a personal transaction no less when he denies it than when he affirms it [citations]."

II. It is appellants' first contention that the evidence clearly shows that Chris Ehlinger received as the attorney-in-fact of the appellants their share of the estate of their stepmother and thus became trustee by operation of law. The record does not support such a claim. The record shows that on April 6, 1945, Chris Ehlinger as attorney-in-fact assigned all the interest of appellants to himself as an individual and then as individual assignee filed a receipt for the distributive shares. Appellants nowhere contend that Chris Ehlinger obtained his property by actual fraud, and there is no evidence upon which a claim of fraud could be based. All that is shown by the record is that property came to Chris Ehlinger in his individual capacity. The mere fact that the property was assigned to and received by Chris Ehlinger 15 years ago is not sufficient evidence from which we can impress a trust upon the property owned by him when he died.

Appellants quote and rely upon 54 Am. Jur., Trusts, section 218, reading as follows: "A constructive trust, or, as it frequently is called, a trust ex maleficio, ex delicto, a trust de son tort, or an involuntary or implied trust is a trust by operation of law which arises contrary to intention and in invitum, against one who, by fraud, actual or constructive, by duress or abuse of confidence, by commission of wrong, or by any form of unconscionable conduct, artifice, concealment, or questionable means, or who in any way against equity and good conscience, either has obtained or holds the legal right to property which he ought not, in equity and good conscience, hold and enjoy. It is raised by equity to satisfy the demands of justice."

With this statement of the law there can be no serious dis-

pute, but there is no evidence before us bringing plaintiffs within the protection of this rule.

The case of Markworth v. State Savings Bank of Woden, 212 Iowa 954, 237 N.W. 471, is cited and quoted by appellants. That case primarily involved a question of procedure, and the factual situation was not the same as we have here.

The appellants argue that Chris Ehlinger acknowledged his trusteeship and did not repudiate it until his will became effective at his death. Appellants rely upon Mahaska County v. Ingalls, 16 Iowa 81, and Robinson v. Robinson, 22 Iowa 427. The Ingalls case discusses the admissibility of declarations against interest made by a dead man, but the case did not involve the competency of a witness under the dead man statute. The Robinson case sets forth the rule relative to resulting trusts but does not involve the dead man statute. These cases do not help the appellants here where there is no evidence by a competent witness.

III. Appellants argue and quote 54 Am. Jur., Trusts, section 248, as follows: "It is a fundamental rule having great practical application particularly in all those fields of law involving fiduciary relationships that equity will pursue property that is wrongfully converted by a fiduciary, or otherwise compel restitution to the beneficiary."

In the case before us there is no evidence of any wrongful conversion.

Robinson v. Robinson, 22 Iowa 427, 431, says: "It is also conceded that the party setting up the trust in such case has the burden of proof, and that he must establish it by evidence which is clear, satisfactory and conclusive, and not by loose and random conversations." There being no written evidence as to any understanding between Chris Ehlinger and the appellants, they must rely upon either an implied or oral contract. Bell v. Pierschbacher, 245 Iowa 436, 62 N.W.2d 784, cites and affirms the rule that proof of a claimed oral contract must be clear, satisfactory and convincing. A mere preponderance of the evidence is not sufficient.

IV. Appellees pleaded as a defense the statute of limitations. The statute of limitations is an affirmative defense and

must be pleaded. Armstrong v. City of Des Moines, 232 Iowa 711, 6 N.W.2d 287. Defendants tendered this defense in their answer.

It is the general rule that the statute of limitations begins to run upon the repudiation of the trust by the trustee. Appellants contend that there was no repudiation of the trust until the death of Chris Ehlinger in 1959 when his will became effective. With this contention we do not agree. There was a complete repudiation of any attorney-in-fact relationship or trusteeship on April 6, 1945, when Chris Ehlinger assigned the interests of the appellants to himself individually. At all times subsequent thereto he exercised complete control and dominion, including the right to mortgage and sell the property, in a manner completely antagonistic to any rights of the appellants.

Appellants cite and rely on Smith v. Smith, 132 Iowa 700, 704, 109 N.W. 194, 195, 119 Am. St. Rep. 581, where a husband in his lifetime purchased land with his wife's money, taking the title in his own name, telling her that he had so arranged that it would belong to her upon his death. In discussing the statute of limitations, Justice Weaver said: "He was in effect her trustee, and the statute of limitations will not run against the trust until there has been some denial or repudiation of it by the trustee. Nor does it come within the contemplation of the statute requiring all express trusts to be proved by writing." It is interesting to note the court's comments that the evidence was ample to establish plaintiff's claim and that the deceased husband quieted his wife's complaints by the assurance that he had arranged his affairs to protect her. The case does not involve the dead man statute nor the competency of the witnesses seeking to establish the claim of the plaintiff. In the cited case there was evidence to support the claim. Here there is none. Plaintiffs' claim is barred.

V. The antenuptial contract between Chris Ehlinger and the lady who later became Christine Ehlinger is not evidence that any part of Chris Ehlinger's property was held in trust. Chris was then about 63 years old. He was contemplating his third marriage. He had three sons. He undoubtedly intended at that time to protect his right to financially favor his sons.

Even if such an intent be assumed, it does not follow that any obligation was recognized or created. At his age and under such circumstances an antenuptial contract was neither unusual nor surprising.

The executed but undelivered deeds were evidence of a donative intent then existing, but nothing else. They contained a reservation of "the life's use and income and control of said property during his lifetime" and further reservations for his surviving spouse, if one survived. The conveyances were to be absolute upon the death of the grantor except for the provisions for the surviving spouse. Their execution admitted no obligations by the grantor and undelivered created no rights in grantees.

Chris Ehlinger retained the right to change his mind as to the disposition of his property and he exercised that right.

Except for the assignment and receipt signed by Chris Ehlinger in April 1945, there is no competent evidence to support plaintiffs' claim. There is no admissible evidence that Chris Ehlinger ever acknowledged or indicated any obligation as alleged by plaintiffs. If there ever was any such obligation it was repudiated on April 6, 1945, when he filed in the records in the Bertha Ehlinger estate an assignment of his sons' interest to himself. Thereafter he exercised dominion over the property. Some parcels he sold. He collected the rents even from his son who now claims to be a creditor. He repeatedly advanced money to help his sons out of financial difficulties. The only one of the plaintiffs who testified had difficulty in remembering these circumstances, but the exhibits refute the idea that the father was indebted to the sons. The record likewise refutes any presumption that there was any trusteeship, actual or constructive. Kermit and Jack Ehlinger did not testify in the trial. Ormen did testify. The admissible evidence (exhibits) concerning his transactions with his father does not support his claim. He testified that he did not know whether his brothers, Kermit and Jack, had ever received their share from the Bertha Ehlinger estate. Recovery cannot be based on such evidence or such lack of evidence.

The trial court was right.
The case is—Affirmed.

All JUSTICES concur except BLISS, J., not sitting.