STATE of Iowa ex rel. Donna R. KRUPKE, Appellant,

v.

Rich WITKOWSKI, Appellee.

No. 2–59212.

Supreme Court of Iowa.

July 29, 1977.

Rehearing Denied Aug. 29, 1977.

Richard C. Turner, Atty. Gen., Lorna L. Williams, Special Asst. Atty. Gen., Zigmund Chwirka, County Atty., and John Samore, Asst. County Atty., for appellant.

William W. Gates, Sioux City, for appellee.

Heard by MOORE, C. J., and MASON, LeGRAND, REES and UHLENHOPP, JJ.

MOORE, Chief Justice.

Plaintiff appeals trial court ruling dismissing paternity action initiated under chapter 675, 1975 Code more than two years after the birth of the child. We affirm.

Plaintiff alleged she was the mother and defendant was the father of an illegitimate child born August 19, 1972. In her prayer she sought an adjudication defendant was the child's father and in addition an order requiring defendant to pay hospital and medical bills incurred and child support. No facts were alleged attempting to circumvent the limitations of section 675.33. The complaint was filed November 19, 1975 and notice was served on defendant the same day. Thus it is undisputed plaintiff's action to establish paternity was filed more than two years after the birth of the child.

Defendant, by way of motion to dismiss, raised as a defense the limitation contained in chapter 675 which provides:

"Proceedings to enforce the obligation of the father shall not be brought after the lapse of more than two years from the birth of the child, unless paternity has been judicially established, or has been acknowledged by the father in writing or by the furnishing of support."

Plaintiff filed a resistance to this motion alleging that section 675.33, if applied to bar her action, would effect an unconstitutional denial of equal protection and due process rights of both complainant and her daughter, Heather. Subsequently plaintiff amended the petition to eliminate all claims for support.

Trial court sustained the motion and dismissed the petition on the ground that our decision in *Jensen v. Voshell,* Iowa, 193 N.W.2d 86, 59 A.L.R.3d 678 mandated such result. This appeal followed.

I. Before addressing the merits of appellant's contentions we briefly consider the propriety of raising the statute of limitations defense by way of a motion to dismiss pursuant to Rule 104(b), Rules of Civil Procedure. Ordinarily the bar of limitations clearly falls within the category of an affirmative defense which must be specially asserted in a separate division of the responsive pleading. Rule 101, R.C.P.; *Ehlinger v. Ehlinger,* 253 Iowa 187, 192, 193, 111 N.W.2d 656, 659; *Smith v. Middle States Co.,* 228 Iowa 686, 696, 293 N.W. 59, 64. However, where it is obvious from the uncontroverted facts appearing on the face of the challenged petition that the claim for relief may be barred when the action was commenced, the defense of limitations may properly be raised by motion to dismiss. *Pride v. Peterson,* Iowa, 173 N.W.2d 549, 554. Of course our determination whether plaintiff's petition presents a situation which affords defendant the option of raising this defense by motion to dismiss must be based solely on matters alleged in the petition. *Riediger v. Marrland Development Corp.,* Iowa, 253 N.W.2d 915, 916; *Ke-Wash Company v. Stauffer Chemical Company,* Iowa, 177 N.W.2d 5, 9.

II. In her first assignment of error appellant urges us to reconsider our holding in *Jensen v. Voshell,* supra, that section 675.33 bars her action in light of subsequent legislative action relating to paternity proceedings and enforcement of child support orders.

In *Jensen* we were presented with an identical situation under chapter 675. There, as here, plaintiff failed to timely file her petition within the two-year limitation of section 675.33. In rejecting the plaintiff's attempt to escape the clear language of that section we stated at page 89, 193 N.W.2d:

"Iowa, by enacting chapter 675, joined Nevada, New York, North Dakota, South Dakota, New Mexico and Wyoming in adopting the Uniform Illegitimacy Act.

Cases from those jurisdictions uniformly hold the special limitation section imposes a time limitation on the *right* to maintain this suit. Consequently, to avoid the limitation, burden is on complainant to plead and prove one of the exceptions permitting the action to be brought more than two years after the child's birth. *Hernandez v. Anaya,* 66 N.M. 1, 340 P.2d 838 (1959); *People on Complaint of Mendes v. Pennyfeather,* 11 Misc.2d 546, 174 N.Y. S.2d 766 (1958); *Deckert v. Burns,* 75 S.D. 229, 62 N.W.2d 879 (1954). There was no common law right to determine paternity through action instituted by the illegitimate child's mother. Such determination is permitted under chapter 675 only as a necessary step in an action to enforce the father's obligation to support the child. Section 675.2, Code, 1971; *Blanton v. Warn,* 444 P.2d 325 (Wyo.1968). *It would be an anomaly to hold, as complainant suggests, that her action under chapter 675 now be considered as one to merely establish paternity and that she could at any later time bring action based on that judgment to enforce the support obligation. Such holding would permit § 675.33 to be circumvented by two consecutive actions when the same issues, raised by one complaint, would clearly fall within the limitation.* (Emphasis added).

Plaintiff contends that the meaning of chapter 675 has been clarified by the legislature since the *Jensen* decision was rendered through enactment of The Child Support Recovery Act, 66 G.A. (1975 Session), chapter 151, now codified at chapter 252B, 1977 Code. Section 5 of that Act provides, inter alia, that the child support recovery unit established by the Act shall provide the following services:

"2. Aid in establishing paternity and securing a court order for support pursuant to chapter six hundred seventy-five (675) of the Code.

"3. Aid in enforcing through court proceedings an existing court order for support issued pursuant to chapters two hundred fifty-two A (252 A), five hundred ninety-eight (598), and six hundred seventy-five (675) of the Code."

Plaintiff argues this statutory language manifests a legislative intent that the legislature intended chapter 675 to provide for two causes of action—one to establish paternity, the other to enforce the obligation. We disagree.

In construing these statutes we must ascertain and give effect to the intention of the legislature. *Spilman v. Board of Directors of Davis Cty.,* Iowa, 253 N.W.2d 593, 596; *Doe v. Ray,* Iowa, 251 N.W.2d 496, 500; *Iowa Dept. of Rev. v. Iowa Merit Employ. Com'n.,* Iowa, 243 N.W.2d 610, 614. In making this determination, since the statutes under consideration relate to the same subject matter, we must consider them in light of their common purpose and intent. Thus the concept of pari materia comes into play. *Spilman v. Board of Directors of Davis Cty.,* supra, 253 N.W.2d at page 596, and cases cited therein; *Catholic Char. of Arch. of Dubuque v. Zalesky,* Iowa, 232 N.W.2d 539, 544.

We believe when the two statutes are properly read together in light of the foregoing principles the *Jensen* rationale becomes even more persuasive. Chapter 252B establishes no new theories of child support recovery but merely creates a vehicle to establish paternity under chapter 675 and enforce existing court orders for support previously entered in chapters 252A, 598, 675 proceedings. Plaintiff's argument seeking to circumvent section 675.33 is without merit. Also see Annot., Statute of Limitations in Illegitimacy or Bastardy Proceedings, 59 A.L.R.3d 685, particularly section 3, pages 698–702; 10 C.J.S. Bastards § 60, pages 155–156.

III. Appellant next contends the application of section 675.33 denies equal protection and due process rights of both mother and child by imposing on them a time limitation not imposed on persons asserting paternal support obligations under different statutes.

This contention is first raised here as it was not pleaded or decided in the lower court. However, because plaintiff's resist-

ance to the motion to dismiss made reference thereto, appeal counsel urges us to consider the constitutionality of section 675.33. Because of its importance in future litigation, we choose to consider and decide the constitutional issues. See *In the Interest of Hochmuth,* Iowa, 251 N.W.2d 484, 488. Our task is made difficult as appellant cites only *Gomez v. Perez,* 409 U.S. 535, 93 S.Ct. 872, 35 L.Ed.2d 56 and appellee has not filed a reply brief.

Our research leads us to observe that most of the legal disabilities which affect illegitimates have been removed to a substantial extent by recent mandate of the United States Supreme Court. *Levy v. Louisiana,* 391 U.S. 68, 88 S.Ct. 1509, 20 L.Ed.2d 436 (right to share in wrongful death recoveries); *Glona v. American Guar. & L. Ins. Co.,* 391 U.S. 73, 88 S.Ct. 1515, 20 L.Ed.2d 441 (same as above); *Willis v. Prudential Insurance Co.,* 405 U.S. 318, 92 S.Ct. 1257, 31 L.Ed.2d 273 (right to share in insurance policies); *Stanley v. Illinois,* 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (putative father's right to notice and custody); *Weber v. Aetna Casualty & Surety Co.,* 406 U.S. 164, 92 S.Ct. 1400, 31 L.Ed.2d 768 (right to share in Workmen's Compensation awards); *New Jersey Welfare Rights Org. v. Cahill,* 411 U.S. 619, 93 S.Ct. 1700, 36 L.Ed.2d 543 (right to share in wholly state supported welfare program); *Jimenez v. Weinberger,* 417 U.S. 628, 94 S.Ct. 2496, 41 L.Ed.2d 363 (right to share in social security disability benefits). However, see, *Fiallo v. Bell,* 430 U.S. 787, 97 S.Ct. 1473, 52 L.Ed.2d 50 (1977) where the Supreme Court upheld an immigration statute which had the effect of excluding the relationship of illegitimate child and natural father (as opposed to natural mother) from special preference immigration status accorded to "child" or "parent" of U.S. citizen or resident. In this opinion the court stated:

"  *   *   *. Congress obviously has determined that preferential status is not warranted for illegitimate children and their natural fathers, perhaps because of a perceived absence in most cases of close family ties as well as a concern with the serious problems of proof that usually lurk in paternity determinations. See *Trimble v. Gordon,* 430 U.S. 763, 97 S.Ct. 1459, 52 L.Ed.2d 31 (1977). In any event, it is not the judicial role in cases of this sort to probe and test the justifications for the legislative decision. *Kleindienst v. Mandel,* 408 U.S. 753, 770, 92 S.Ct. 2576, 2585, 33 L.Ed.2d 683 (1972)." 430 U.S. at 799, 97 S.Ct. at 1481, 1482, 52 L.Ed.2d at 60, 61.

A thorough analysis of cases dealing with the rights and status of illegitimate children is collected in two outstanding annotations. See Annot., Illegitimate Children—Rights and Status, 41 L.Ed.2d 1228; Annot., Discrimination on Basis of Illegitimacy as Denial of Constitutional Rights, 38 A.L.R.3d 613.

█ Recent developments have clarified the mode of analysis applicable to a case of this nature. In *Mathews v. Lucas,* 427 U.S. 495, 96 S.Ct. 2755, 49 L.Ed.2d 651 (1976) the Court considered and rejected an argument that classifications based on illegitimacy are "suspect" so that any state justifications for difference in treatment must survive "strict scrutiny." The court concluded such classifications are "in this realm of less than strict scrutiny," although such scrutiny "is not a toothless one." Thus the burden remains upon those challenging the statute to show it bears no rational relationship to a legitimate governmental interest. *Mathews v. Lucas,* 427 U.S. at 505–510, 96 S.Ct. at 2762, 2764, 49 L.Ed.2d at 661–664. Applying this analysis the court upheld a provision of the Social Security Act against equal protection challenge that conditions the eligibility of certain illegitimate children for surviving child's insurance benefits upon a showing the deceased wage earner was the claimant child's parent and, at the time of his death, was living with the child or was contributing to his support.

█ In April of this year the Supreme Court struck down an Illinois probate statute which allowed illegitimate children to inherit by intestate succession only from their mothers but provided legitimate children to inherit by intestate succession from

both their mothers and their fathers. *Trimble v. Gordon,* 430 U.S. 763, 97 S.Ct. 1459, 52 L.Ed.2d 31 (1977). While declining to directly overrule *Labine v. Vincent,* 401 U.S. 532, 91 S.Ct. 1017, 28 L.Ed.2d 288, wherein a Louisiana statute which differentiated on the basis of the character of the child's illegitimacy was upheld against equal protection challenge, the court's analysis clearly called into question the analysis used there. The court severely criticized the "most perfunctory analysis" utilized by the Illinois supreme court to sustain the state statute against constitutional attack and stated at 430 U.S. 769, 97 S.Ct. at 1464, 1465, 52 L.Ed.2d at 38–39:

"In a case like this, the Equal Protection Clause requires more than the mere incantation of a proper state purpose. No one disputes the appropriateness of Illinois' concern with the family unit, perhaps the most fundamental social institution of our society. The flaw in the analysis lies elsewhere. As we said in *Lucas,* the constitutionality of this law 'depends upon the character of the discrimination and its relation to legitimate legislative aims.' 427 U.S. at 504, 96 S.Ct. at 2761 [2755], 49 L.Ed.2d 651. The court below did not address the relation between § 12 [of Illinois Act] and the promotion of legitimate family relationships, thus leaving the constitutional analysis incomplete. The same observation can be made about this Court's decision in *Labine,* but that case does not stand alone. In subsequent decisions, we have expressly considered and rejected the argument that a State may attempt to influence the actions of men and women by imposing sanctions on the children born of their illegitimate relationships."

The Court's decision turned on a determination that unlike the statutory scheme in *Lucas,* the Illinois Act was *not* "carefully tuned to alternative considerations" but operated to totally effect a statutory disinheritance of illegitimate children whose fathers die intestate. *Trimble v. Gordon,* 430 U.S. at 772, 97 S.Ct. at 1466, 52 L.Ed.2d at 40–41.

With this background we now consider the case of *Gomez v. Perez,* 409 U.S. 535, 93 S.Ct. 872, 35 L.Ed.2d 56, which appellant contends entitles her to reversal. In *Gomez,* the Supreme Court held a Texas statutory scheme which granted legitimate children a judicially enforceable right to support from their fathers but denied that right to illegitimate children as violative of Equal Protection, stating:

" * * *. We therefore hold that once a State posits a judicially enforceable right on behalf of children to needed support from their natural fathers there is no constitutionally sufficient justification for denying such an essential right to a child simply because its natural father has not married its mother. * * *." 409 U.S. at 538, 93 S.Ct. at 875, 35 L.Ed.2d at 60.

While recognizing the problems of proof in the paternity context the court held these problems do *not* justify an absolute barrier to paternal support of illegitimates. Section 675.33 does not justify such a barrier; it provides the method of proof and time limitation for proving paternity.

IV. Recently in *Cessna v. Montgomery,* 63 Ill.2d 71, 344 N.E.2d 447 (1976) the Illinois supreme court was faced with a challenge strikingly similar to the one brought here. There the plaintiffs also challenged a two-year limitation period on due process and equal protection grounds. In a well-reasoned opinion the court rejected these arguments as follows:

"It is important to emphasize that there is here *no problem of discrimination in a child's right to support from its father.* The Paternity Act, as earlier noted, provides for the illegitimate support rights equal to those of the legitimate— once paternity is established. (Ill.Rev. Stat.1973, ch. 106¾, par. 52.) This provision is in complete accord with *Gomez.* Our cases, however, do not involve an issue of the right to support; it is only the question of paternity which is not settled and directly in issue. That proof of paternity places a burden on illegitimate children not shared by legitimate

children is of course, true; it is also unavoidable. (H. Krause, Illegitimacy: Law and Social Policy 82 (1971); Note, *Illegitimacy and Equal Protection,* 49 N.Y.U.L. Rev. 479, 511 (1974).) Illegitimate children differ fundamentally from legitimate children in that at birth they have no legal relationship to their natural father. In the language of equal protection analysis, legitimate and illegitimate children are not similarly situated classes. It is not only entirely reasonable but essential that the State require proof of the paternity of illegitimates as a condition to asserting an otherwise equal support right. The question is whether the method provided by our Paternity Act for establishing paternity is constitutionally adequate.

"Relying on *Gomez,* defendants argue that our Paternity Act provisions are valid because they provide the means of establishing the illegitimate's right to equal support, the absence of which in Texas law was condemned in *Gomez* as an 'insurmountable barrier.' Insurmountability, however, while of major importance, may not be the sole test of constitutionality, for *Weber* indicates that unlawful discrimination may exist even though illegitimates are not broadly or absolutely barred. (406 U.S. 164, 172, 92 S.Ct. 1400, 1405, 31 L.Ed.2d 768, 777.) As we interpret *Gomez,* the court there held that a State's interest in alleviating difficult problems of proof cannot justify imposing an absolute barrier to paternal support of illegitimates; they must be afforded a chance to prove paternity. This appeal, therefore, picks up where *Gomez* left off. The broad question here is to what extent a State may limit or burden the right of an illegitimate child to bring a paternity action. While the issue may be styled as one of substantive due process rather than equal protection, the labeling is of little assistance, for our function remains the same. We must decide if the statute is reasonable, after evaluating the competing interests. To paraphrase the *Weber* formulation: What legitimate State interests does the

stature promote? What fundamental personal rights might the statute endanger?

"Plaintiffs' first objection to the statute is directed to the two-year limitation period and the fact that, if a paternity suit is not brought within two years of birth, the illegitimate child is thereafter barred from asserting his undeniably important right to support from his natural father. Plaintiffs imply that any limitation period is inconsistent with due process. We disagree. No Supreme Court case has indicated, and *Gomez* cannot be read to require, that illegitimates be given an unrestricted right throughout their minority to bring a paternity action. The State has a legitimate interest in preventing the litigation of stale or fraudulent claims. (*Jimenez v. Weinberger* (1974), 417 U.S. 628, 636, 94 S.Ct. 2496, 2501, 41 L.Ed.2d 363, 370.) The State of Illinois Family Study Commission has concluded, even with the two-year limitation period, that paternity actions are beset with coercion, corruption and perjury. (Report and Recommendations to the 76th General Assembly, at 55 (1969).) It may well be that the longer the period between birth and suit the greater the possibility of fraud. At the very least, a defendant's problems of proof are substantially increased. In our judgment the General Assembly, in order to promote the State's legitimate interests, may establish any limitation period it deems appropriate so long as it is not so short as to be tantamount to the impenetrable barrier proscribed in *Gomez.* (Cf. *Trustees of Schools v. Batdorf* (1955), 6 Ill.2d 486, 493, 130 N.E.2d 111; 51 Am.Jur.2d *Limitation of Actions,* sec. 12 (1970).) In our opinion a two-year limitation is not impermissibly brief; and, in any event, the fact that the support right potentially forfeited is an important one does not authorize this court to select a longer period. We could only remove the limitation altogether, and the Constitution does not in our judgment compel that result. Nor is section 4 unreasonable because of

its provision tolling the two-year period while defendant is absent from the State. (Ill.Rev.Stat.1973, ch. 106¾, par. 54.) It can be argued that the tolling provision defeats the permissible State interest in preventing stale claims since suit could potentially be brought many years after the child's birth. A similar provision applies, however, to personal actions generally, and is indistinguishable from the one in the Paternity Act. (Ill.Rev.Stat.1973, ch. 83, par. 19.) We see nothing in the tolling of the limitation period during defendant's absence from the State which appreciably affects its interest in eliminating stale or fraudulent claims.

"Plaintiffs' second, and more troublesome, objection is that the operation of the statute can bar the child's support right through no fault of its own. Since only the mother may bring a paternity suit, the child is prejudiced by the mother's inaction.

"The question, of course, is whether authorizing only the mother to bring suit unreasonably hinders the child's opportunity to secure support from his natural father. Obviously, the action must be brought by some person on the child's behalf, for the child cannot do so himself within the limitation period. And, we note parenthetically, it is within the competence of the legislature to enact a limitation period not tolled during minority. *Vance v. Vance* (1883), 108 U.S. 514, 2 S.Ct. 854, 27 L.Ed. 808; *Pittman v. United States* (9th Cir. 1965), 341 F.2d 739; *Johnson v. Industrial Com.* (1972), 53 Ill.2d 23, 289 N.E.2d 627; *In re People in Interest of L. B.* (1972), 179 Colo. 11, 498 P.2d 1157, cert. denied, 410 U.S. 976, 93 S.Ct. 1497, 36 L.Ed.2d 173; *Shaw v. Zabel* (1974), 267 Or. 557, 517 P.2d 1187; 51 Am.Jur.2d *Limitation of Actions* sec. 182 (1970). Contra, *Perez v. Singh* (1971), 21 Cal.App.3d 870, 97 Cal.Rptr. 920.

"Possible legislative alternatives would include authorizing an action by a next friend or guardian. Plaintiffs argue that under no circumstances should the mother be permitted to sue on behalf of the child since their interests are potentially adverse. (See H. Krause, Illegitimacy: Law and Social Policy 113, 151–52 (1971); Note, *Illegitimacy and Equal Protection,* 49 N.Y.U.L.Rev. 479, 530 (1974); Gray & Rudovsky, *The Court Acknowledges the Illegitimate: Levy v. Louisiana and Glona v. American Guarantee & Liability Insurance Co.,* 118 U.Pa.L.Rev. 1, 25 (1969).) Her continuing fondness for the father or her reluctance to publicly reveal her indiscretion could result in a decision to forego an otherwise viable suit. We do not deny this possibility exists. Yet, plaintiffs' argument assumes that the child's interest is always best served by prompt suit against the father. Society still regards an illegitimate birth as something of a scandal, however, and the best interests of the child in a particular case may not always lie in the direction of public action against the natural father. It seems to us that the mother is ordinarily best positioned to make this difficult decision. Moreover, once a decision has been made to file an action, the interests of mother and child substantially coincide. Support for this conclusion is to be found in *Pittman v. United States* (9th Cir. 1965), 341 F.2d 739, where the court held a minor's tort claim against the government could constitutionally be barred after two years although he had no guardian *ad litem,* and despite a claimed conflict of interest that may have caused the father to subordinate his son's interest. The court specifically rejected plaintiff's contention that his right was meaningless because he could not act for himself during his minority.

"In our judgment the General Assembly could reasonably conclude that the support right of an illegitimate child is best protected by requiring the action to be brought by the mother, and that the potential harm to putative fathers defending stale claims is, on balance, greater than the potential harm to illegitimate children whose support right is forfeited by the mother's inaction. The failure to bring a paternity suit, of course, forecloses only the right to support from the

natural father. Still available are support from the mother and from public funds, if necessary. We accordingly hold section 4 of the Paternity Act is not vulnerable to the attacks here made upon it. *In re People in Interest of L. B.* (1972), 179 Colo. 11, 498 P.2d 1157, *cert. denied*, 410 U.S. 976, 93 S.Ct. 1497, 36 L.Ed.2d 173.

"Plaintiffs' additional contentions that mothers of illegitimate children are denied equal protection because they can sue for support only if they establish paternity within two years, whereas mothers of legitimates may sue for support at any time during the child's minority, and that mothers of illegitimates are denied equal protection because they have automatic support obligations, while fathers of illegitimates have this obligation only if paternity is established within two years, wholly ignore, as earlier mentioned, that an illegitimate child has no fixed legal relationship to its father at birth. Since that relationship must be proved, and since we have determined the two-year limitation period is reasonable, we find no constitutional infirmity. Furthermore, since the mother controls the filing of the paternity action, any disadvantage that may accrue to her may well be the result of her own delay or inaction. Nor is it entirely irrelevant that her status as the mother of an illegitimate child is rarely involuntarily incurred." 63 Ill.2d at 81–86, 344 N.E.2d at 451–454.

We agree with the rationale of the *Cessna* case for it recognizes that until the proof of parentage is proved the putative father has no fixed legal obligation to support the child. Of course, once such relationship is proved the support obligation attaches. We believe this is all *Gomez* requires; nothing in that opinion in any way indicates the legislature may not enact limitation statutes to prevent litigation of stale or fraudulent claims. See also *In re People in Interest of L. B.,* 179 Colo. 11, 19, 498 P.2d 1157, 1161, cert. denied, 410 U.S. 976, 93 S.Ct. 1497, 36 L.Ed.2d 173. Neither do we believe the recent pronouncements in *Trimble v. Gordon,* supra, limit our conclusions in this regard. In a footnote to that opinion the court states:

"Evidence of paternity may take a variety of forms, some creating more significant problems of inaccuracy and inefficiency than others. The states, of course, are free to recognize these differences in fashioning their requirements of proof. Our holding today goes only to those forms of proof which do not compromise the States' interests. This clearly would be the case, for example, where there is a prior adjudication or formal acknowledgment of paternity. Thus, we would have a different case if the state statute were carefully tailored to eliminate imprecise and unduly burdensome methods of establishing paternity." 430 U.S. at 772, 97 S.Ct. at 1466, 52 L.Ed.2d at 41.

We believe the Iowa statute is clearly so drafted. We further note the statute is "carefully tuned to alternative considerations" as it provides for three specific exceptions to an absolute bar to establishing paternity within the two-year time period.

■ V. Our opinion today is but another recognition that statutes of limitations go to matters of remedy and not to destruction of fundamental rights. *Wolder v. Rahm,* Iowa, 249 N.W.2d 630; *Bruce v. Wookey,* 261 Iowa 231, 154 N.W.2d 93 (probate claims barred); *Presbytery of Southeast Iowa v. Harris,* Iowa, 226 N.W.2d 232 (title claim barred where no compliance section 614.24); 51 Am.Jur.2d Limitation of Actions, section 27, page 611; 53 C.J.S. Limitations of Actions § 2, pages 905–907; 16A C.J.S. Constitutional Law § 560, pages 510–512.

The Supreme Court many years ago in *Chase Securities Corp. v. Donaldson,* 325 U.S. 304, 314, 65 S.Ct. 1137, 1142, 89 L.Ed. 1628, 1635 aptly summarized the law in this regard as follows:

"Statutes of limitation find their justification in necessity and convenience rather than in logic. They represent expedients, rather than principles. They are practical and pragmatic devices to spare the courts from litigation of stale

claims, and the citizen from being put to his defense after memories have faded, witnesses have died or disappeared, and evidence has been lost. *Order of R. Telegraphers v. Railway Exp. Agency,* 321 U.S. 342, 349, 64 S.Ct. 582, 586, 88 L.Ed. 788, 792. They are by definition arbitrary, and their operation does not discriminate between the just and the unjust claim, or the avoidable and unavoidable delay. They have come into the law not through the judicial process but through legislation. They represent a public policy about the privilege to litigate. Their shelter has never been regarded as what now is called a 'fundamental' right or what used to be called a 'natural' right of the individual. He may, of course, have the protection of the policy while it exists, but the history of pleas of limitation shows them to be good only by legislative grace and to be subject to a relatively large degree of legislative control."

In view of the foregoing we hold under these circumstances the defense of limitations is available by a motion to dismiss. Trial court was correct in sustaining defendant's motion.

AFFIRMED.