# IN THE COURT OF APPEALS OF IOWA

No. 19-0600
Filed September 2, 2020

**CHARLES E. McBETH and JANET M. McBETH, Individually and as Trustees of the CHARLES E. McBETH & JANET M. McBETH REVOCABLE TRUST, dated September 13, 2012;,**
Plaintiffs-Appellees,

**vs.**

**CAROLYN McBETH,**
Defendant-Appellant.

_____

Appeal from the Iowa District Court for Wapello County, Shawn R. Showers, Judge.

Carolyn McBeth appeals the district court's ruling for Charles and Janet McBeth on their breach-of-contract claim, and Charles and Janet McBeth cross-appeal the adverse rulings in a replevin action. **AFFIRMED ON APPEAL; AFFIRMED IN PART, REVERSED IN PART, AND REMANDED ON CROSS-APPEAL.**

Matthew J. Adam and Chad D. Brakhahn of Simmons Perrine Moyer Bergman PLC, Cedar Rapids, for appellant.

Dustin D. Hite and Randy S. DeGeest of Heslinga, Dixon & Hite, Oskaloosa, for appellees.

Considered by Bower, C.J., and Doyle and Schumacher, JJ.

**DOYLE, Judge.**

The parties involved in a dispute over an oral farm lease and possession of farm equipment appeal and cross-appeal from the district court order entering judgment for the plaintiffs on their breach-of-contract claim and denying a replevin claim.

## I. Background Facts and Proceedings.

Charles and Janet McBeth own land in Wapello County. They allowed their son, Stephen, to farm their land free of charge, and Charles provided Stephen his farm equipment for use. When Stephen died in January 2012, his wife, Carolyn, offered to pay Charles and Janet rent to continue to farm the land. But because Carolyn was in debt, Charles refused to accept any payment from her in 2012. In 2013, he asked Carolyn to pay him $60,000 to farm the land, an amount that would cover property tax.

The dispute began over the amount of rent due for the 2014 crop year. Charles testified that he believed Carolyn was out of debt by the end of 2013. So when Carolyn paid rent for the 2013 crop year, Charles asked that she pay $275 per acre in 2014, which is the rate he and Janet charged their other tenants. Carolyn claims she believed the rent for 2014 was $60,000, the same amount as the year before, and she sent a check for that amount in December 2014. Charles and Janet voided and returned the check with a letter stating that their accountant told them they "should charge a reasonable amount of rent" or they would be subject to gift tax. The letter also states, "We thought $275 per acre would be fair as that is the amount that [other tenants] were paying."

In March 2015, Carolyn tendered a check for $393,250, an amount based on use of an estimated 1430 acres. Charles believed the check was for the 2014 rent Carolyn owed. But Carolyn claims she was paying upfront for the 2015 rent, testifying that she told Charles, "This is for 2015. 2014 is done. I've already done my taxes." According to Carolyn, Charles agreed.

On March 1, 2016, Carolyn tendered a check for $388,756.50 because she learned she was farming only 1413.66 acres. Carolyn claims the March 2016 check was for 2016 rent. But Charles, believing the check was for the 2015 crop year, wrote "YR 2015" in the memo line.

Carolyn terminated the lease after the 2016 crop year. She made no other payments to Charles and Janet.

In March 2018, Charles and Janet[1] petitioned alleging Carolyn breached the terms of the lease by failing to pay the full amount of rent due. Charles also petitioned in replevin, seeking the return of his farm equipment from Carolyn. Carolyn denied she breached the oral contract and filed a counterclaim, alleging Charles and Janet sold a combine that belonged to her. The district court consolidated the cases and held a bench trial in March 2019. In its ruling, the court found the parties entered an oral lease agreement in 2012. It found rent was $0 for 2012 and the parties amended the agreement to provide a total rent payment of $60,000 for 2013. The court also found that the parties renegotiated the terms of the lease in March 2015 for payment of $275 per acre and rejected Carolyn's claim that her $393,350 payment in March 2015 was advance payment of the 2015

---

[1] Charles and Janet sued in their individual capacities, as well as in their capacities as Trustees of the Charles E. McBeth & Janet May McBeth Revocable Trust.

rent as "not credible." It instead found that the March 2015 check was tendered to pay rent for the 2014 crop year. The court also found that the $388,756.50 Carolyn paid in March 2016 was rent for the 2015 crop year. Because Carolyn never paid rent for 2016 crop year, the court determined Charles and Janet were entitled to $388,756.50[2] in damages.

As for the replevin action, the court ordered Carolyn to return to Charles immediately a tractor and bulldozer that Carolyn agreed Charles owned. But the court found the remaining farm equipment belonged to Carolyn because it was listed in the inventory of Stephen's estate. The court also found that a combine listed in the estate inventory and valued at $45,000 belonged to Carolyn. Because Charles and Janet sold the combine, the court credited Carolyn $45,000 against the judgment on the breach-of-contract claim and entered judgment for Charles and Janet in the amount of $343,756.50. Carolyn appealed the court's ruling on the breach-of-contract claim, and Charles and Janet cross-appealed the court's replevin ruling.[3]

**II. Scope of Review.**

The parties disagree on the standard of review. We review cases tried at law for correction of errors at law, and we review cases tried in equity de novo. *See* Iowa R. App. P. 6.907. Here, both actions were docketed as cases in equity, but that alone does not control our review. *See Horsfield Materials, Inc. v. City of*

---

[2] The original order misstated this amount as $288,756.50, but the court later amended the order to the proper amount.

[3] Although the number of exhibits in the appendix was not large, it would have been helpful had the table of contents given a concise description for each exhibit listed as required by Iowa Rule of Appellate Procedure 6.905(4)(c).

*Dyersville*, 834 N.W.2d 444, 452 (Iowa 2013). Rather, whether the matter was tried at law or in equity turns on the "essential character of a cause of action" and the nature of relief sought. *Quigley v. Wilson*, 474 N.W.2d 277, 279 (Iowa Ct. App. 1991), *aff'd*, 474 N.W.2d 277 (Iowa 1991). And the nature of both actions is at law. *See id.* ("Where the primary right of the plaintiff arises from nonperformance of a contract, where the remedy is money, and where the damages are full and certain, remedies are usually provided at law."); *see also Short v. Martin*, 121 N.W.2d 154, 156 (Iowa 1963) ("Replevin is an action at law . . . ."). We review a case on appeal in the same manner in which the trial court considered it. *See Johnson v. Kaster*, 637 N.W.2d 174, 177 (Iowa 2001); *Ernst v. Johnson Cnty.*, 522 N.W.2d 599, 602 (Iowa 1994). When, as here, the trial court rules on objections at trial and issues a ruling and enters judgment rather than a decree, the case is tried at law. *See Van Sloun v. Agans Bros., Inc.*, 778 N.W.2d 174, 179 (Iowa 2010). Because the nature of the actions and how they were tried was at law, our review is for correction of errors at law. *See* Iowa R. App. P. 6.907.

### III. Breach of Contract.

Carolyn challenges the district court's finding that she breached the oral farm lease by failing to pay rent for the 2016 crop year. "A party who seeks recovery on a contract has the burden to prove the existence of a contract." *Hawkeye Land. Co. v. Iowa Power & Light Co.*, 497 N.W.2d 480, 486 (Iowa 1993). Although a party need only show a reasonable certainty that an oral contract existed, the terms of that contract must be definite enough to determine the duties and obligations of each party with certainty. *See Netteland v. Farm Bureau Life Ins. Co.*, 510 N.W.2d 162, 165 (Iowa Ct. App. 1993). This requires proof by "clear,

satisfactory and convincing" evidence. *Ehlinger v. Ehlinger*, 111 N.W.2d 656, 659 (Iowa 1961). Evidence is clear and convincing if "there be no serious or substantial doubt about the correctness of the conclusion drawn from it." *Raim v. Stancel*, 339 N.W.2d 621, 624 (Iowa Ct. App. 1983).

The district court found "that the parties had an oral agreement for cash rent as of March 2015 for $275/acre." Carolyn argues the court erred in finding that the parties amended the farm lease in March 2015 and by applying that amendment retroactively to increase the amount of rent due in 2014. She argues there can be no valid agreement to retroactively amend the lease for the 2014 crop year because such an amendment was unsupported by consideration.[4] Carolyn is

---

[4] Charles and Janet argue that Carolyn failed to preserve this claim for appellate review because Carolyn never raised a defense of lack of consideration in the district court. Because a written and signed contract is presumed to be supported by consideration, a party asserting lack of consideration as a defense bears the burden of establishing the defense. *See* Iowa Code §§ 537A.2 (2018) ("All contracts in writing, signed by the party to be bound or by the party's authorized agent or attorney, shall import a consideration."), .3 ("The want or failure . . . of the consideration of a written contract may be shown as a defense . . . ."); *Margeson v. Artis*, 776 N.W.2d 652, 656 (Iowa 2009) (noting that because "we presume a written and signed agreement is supported by consideration," "a party asserting a lack-of-consideration defense has the burden to establish the defense"); *Beal v. Milliron*, 267 N.W. 83, 85 (Iowa 1936) ("[T]he presumption created by this statute was sufficient to cast the burden upon the defendant to overcome the same."). This has long been the law. *See Linder v. Lake*, 6 Iowa 164, 167 (1858) (noting that "by the statute (Code, section 975), all contracts in writing, signed by the party to the bond, his agent or attorney, import a consideration, in the same manner as sealed instruments did at the time of the adoption of the Code," which is an extension of an 1839 law providing any instrument under seal is deemed valid and binding, which itself was an extension of the common law). But this dispute involves an oral contract rather than one that is written and signed, so there is no presumption of consideration for Carolyn to overcome. Rather, Charles and Janet bore the burden of proving consideration as part of an enforceable contract, which includes the element of consideration. *See Margeson*, 776 N.W.2d at 655 ("It is fundamental that a valid contract must consist of an offer, acceptance, and consideration."); *Taggart v. Drake Univ.*, 549 N.W.2d 796, 800 (Iowa 1996) (stating

correct that the parties cannot modify the lease to increase the rent owed for the 2014 crop year after it concluded because such modification lacks consideration.

> No consideration exists when the promisee has a preexisting duty to perform because a promisor is already entitled to receive the promise made by the promisee and the promisee has only made what amounts to a gratuitous promise. We have specifically applied this rule to preexisting contractual obligations when parties to an original contract agree to modify that contract.

*Margeson v. Artis*, 776 N.W.2d 652, 656, 658 (Iowa 2009); *see also Recker v. Gustafson*, 279 N.W.2d 744, 759 (Iowa 1979) (holding that "new consideration is necessary to support a contract modification" and disavowing a line of cases with language to the contrary after finding those cases "digressed from our previous case law on the necessity of consideration to support a contract modification without either sound reasoning or reconciliation of previous authority"); *City of Des Moines v. Horrabin*, 215 N.W. 967, 969 (Iowa 1927) (holding that "the performance of a valid contract is no consideration for an increase in the price agreed to be paid therefor"); *Runkle & Fouse v. Kettering*, 102 N.W. 142, 142 (Iowa 1905) ("Merely fulfilling an existing obligation would not supply a new consideration.") "Modification of an existing agreement which imposes new obligations on one of the parties is unenforceable for lack of consideration unless it also imposes a new obligation on the other party." 17A C.J.S. Contracts § 571 (June 2020 update).

But clear and convincing evidence shows the parties agreed to new lease terms before the 2014 crop year. Charles testified he asked Carolyn to pay the full amount of rent when she paid the $60,000 she owed for the 2013 crop year. When

---

that the party bringing a breach-of-contract action bears the burden of proving the existence of an enforceable contract).

Carolyn paid only $60,000 the next year, instead of the agreed on amount of $275 per acre, Charles and Janet voided and returned Carolyn's check. The letter accompanying the voided check reiterated the lease modification, stating, "We thought $275 per acre would be fair . . . ." And the parties' conduct following the 2014 crop year confirms the lease was modified. *Passehl Estate v. Passehl*, 712 N.W.2d 408, 417 (Iowa 2006) ("Consent to the modification may be either express or implied from acts and conduct."). Clearly, Charles understood that Carolyn's rent payments in March 2015 and 2016 were being made for the previous year as he wrote "YR 2015" on the March 2016 check. And that was in keeping with Carolyn's practice of paying the rent at the end of each crop year. The district court found Carolyn's claim that she paid a year's worth of rent in advance of the 2015 and 2016 crop seasons "was not customary for farm leases" and "not credible." We are bound by this finding. *See Van Sloun v*, 778 N.W.2d at 182 ("On appeal in a law action we are bound by such factual findings on the credibility of witnesses." (citation omitted)). And if Carolyn had only agreed to pay the rent increase beginning in 2015 because, as she claims she told Charles, "2014 [wa]s done" and she had "already done [her] taxes," there is no explanation as to why she never issued a new check for $60,000 to pay rent for the 2014 crop year after Charles and Janet voided the first check. It is hard to believe that Charles and Janet would have demanded the 2015 rent paid in advance of the 2015 crop season without also demanding the rent Carolyn owed for the 2014 crop season. The more credible explanation is that the March 2015 payment applied to the 2014 crop year to conform to an agreement the parties reached at the end of the 2013 crop year to increase the rent payment to $275 per acre.

We affirm the finding that Charles and Janet are entitled to $388,756.50 in damages on their breach-of-contract claim.

**IV. Replevin Action.**

We turn then to Charles's cross-appeal of the replevin action. In a replevin action, the court must determine which party is entitled to possession of property. *See* Iowa Code § 643.17 (2018). The purpose is to restore possession of property to the party entitled to possess it. *See Roush v. Mahaska State Bank*, 605 N.W.2d 6, 9 (Iowa 2000); (providing that judgment shall determine which party is entitled to possess the property and designate the party's right therein).

Charles's replevin lists nine items of farm equipment to which he claims ownership. Carolyn agreed that Charles was entitled to possession of two of those items, a John Deere 4440 tractor and a 2007 Caterpillar D6G bulldozer, and the court ordered their immediate return. This portion of the court's order is not contested on appeal and is affirmed. The remaining items in the petition had been listed in the inventory of Stephen's estate in 2012. On this basis, the court determined that Carolyn was entitled to possession of those items and denied Charles's petition.

Charles challenges the district court's determination that he is not entitled to relief on his replevin claim. He argues the district court erred in relying on inventory of Stephen's estate in determining ownership and ignoring the evidence showing Charles is the owner of the equipment. At trial, Charles introduced into evidence a Titan Machinery customer equipment purchase order for the sale of four items of farm equipment listed in his petition. The purchase order lists the customer name as Charles McBeth and was signed and dated on March 19,

2012—two months after Stephen died. Charles testified that two wagons listed in his petition had belonged to Stephen but that Stephen traded them in to Titan Machinery. On March 19, 2019, the same day that Charles completed the purchase of other items of farm equipment, Charles made an agreement with Titan Machinery to trade in five smaller wagons for the two larger wagons that Stephen had owned. The purchase order showing the trade was also admitted into evidence at trial. The final item of equipment listed in the petition is a grain drill, which Charles testified he obtained in a trade with a farmer who needed a lighter drill.

The only evidence Carolyn introduced as to ownership of the farm equipment was the inventory of Stephen's estate. But the inventory is not evidence of ownership. *See Estate of Randeris v. Randeris*, 523 N.W.2d 600, 604 (Iowa Ct. App. 1994) ("[A] hearing on a final report does not invoke the court's jurisdiction to actually adjudicate title to property."); *see also Davis v. Travelers Ins. Co.*, 196 N.W.2d 526, 529 (Iowa 1972) ("The probate court has jurisdiction to determine the claim of property as between those interested in the estate but this authority goes only to determination of their relative interests as derived from the estate, and not to an interest claiming adversely thereto."); *In re Estate of Anders*, 26 N.W.2d 67, 70-72 (Iowa 1947) (reviewing cases and concluding that probate is not the proper forum in which to try an adverse claim of title). The uncontroverted evidence presented by Charles at trial establishes his ownership in the farm equipment listed in his petition. For this reason, we reverse the portion of the district court's order denying Charles's replevin claim and remand to the district court to issue a writ of replevin for the seven items listed in the petition and contested on appeal or an

order in replevin entering judgment against Carolyn for the value of the equipment. Since not contested on appeal, that portion of the court's order ordering the return to Charles of the John Deere 4440 tractor and the 2007 Caterpillar D6G bulldozer is affirmed.

**V. John Deere 9400 Combine.**

Charles also challenges on cross-appeal the court's finding for Carolyn on her counterclaim over ownership of a John Deere 9400 combine, which Charles and Janet sold.  The court found that the combine's listing in Stephen's estate inventory established Carolyn's ownership and that she was entitled to damages in the amount of the combine's value of $45,000, and the court subtracted that amount from the damages she owed for breach of contract.  The evidence shows otherwise.  Charles testified he bought the combine in 2010 for $35,000 and sold it in 2013.  He introduced his tax depreciation schedule into evidence, which lists the date the equipment was put in service as September 2010, its tax cost as $35,000, its prior tax depreciation as $10,446.43, and its current tax depreciation as $5261.48.  The uncontroverted evidence shows Charles owned the combine. We therefore reverse the portion of the court's order finding for Carolyn on her counterclaim and remove the $45,000 credit against the breach-of-contract judgment.

**AFFIRMED ON APPEAL; AFFIRMED IN PART, REVERSED IN PART, AND REMANDED ON CROSS-APPEAL.**