## No. C-75

The People of the State of Colorado, In the Interest of L.B., M.B., a/k/a V.B., Upon the Petition of B.C., And Concerning L.V.B.

(498 P.2d 1157)

Decided June 12, 1972.                    Rehearing denied August 8, 1972.

Max P. Zall, City Attorney, Frank A. Elzi, Assistant, Robert A. Powell, Assistant, Ronald Schultz, Assistant, for petitioner-appellee.

Kaufman, Greenwald and Machol, Jack Greenwald, for respondent-appellant.

*En Banc.*

MR. JUSTICE KELLEY delivered the opinion of the Court.

In its Petition for Writ of Certiorari the petitioner alleged that the Court of Appeals in its opinion, 29 Colo. App. 101, 482 P.2d 1010, had (1) decided a question of substance in a way probably not in accord with applicable decisions of this court, and further, that the Court of Appeals had (2) interpreted the Children's Code in a manner which results in the denial of equal protection of the law to illegitimate children, in violation of the constitution, citing *Munn v. Munn*, 168 Colo. 76, 450 P.2d 68. We granted certiorari.

The resolution of both issues involves the construction of two articles of the Children's Code, namely 1967 Perm. Supp., C.R.S. 1963, 22-6-1, *et seq.* ("Paternity Proceedings") and 1967 Perm. Supp., C.R.S. 1963, 22-7-1, *et seq.* ("Support Proceedings"), referred to herein respectively as Article 6 and Article 7. The question is whether the Court of Appeals was correct when it held that the exclusive means of adjudicating contested paternity is under Article 6, or whether the issue of paternity may be adjudicated also under Article 7, as an adjunct of support proceedings. Our examination of the Children's Code and the authorities cited by the petitioner in support of its position lead us to the conclusion that the Court of Appeals correctly decided the issues.

A brief statement of the facts is necessary to a discussion of the applicable law. In January, 1967, a "Petition in Contributing to Dependency" was filed by the petitioner against the respondent under a previous statute. In that petition respondent was alleged to be the father of petitioner's two children, aged 8 and 9 years. Service of process was quashed August, 1967, and the petitioner filed an amended petition under the present Article 6. The Juvenile Court dismissed the amended petition on the basis of 22-6-1(2), a limitation statute which reads:

"No proceeding under this article shall be initiated after the child is five years old, unless paternity has been acknowl-

edged by the father in writing or by furnishing support."

In May, 1968, a new "Petition in Support Proceedings" under Article 7 was filed. Respondent answered that contested paternity could not be adjudicated under Article 7 and demanded a jury trial. The Juvenile Court denied the request for a jury trial, proceeded to hear the evidence in support of the petition, determined that the respondent was the father of petitioner's children, and entered an order for their support. As indicated above, the Court of Appeals reversed.

As noted by the Court of Appeals, the adoption of the Children's Code followed an in-depth study by the Colorado Legislative Council (Research Publication No. 111, December, 1966). The text of the report indicates that it was the intention of the General Assembly that Articles 6 and 7 were to perform separate and distinct functions. The title of Article 6 is "Paternity Proceedings." The title of Article 7 is "Support Proceedings." The text of the report states that the purpose of a paternity proceeding is to establish accurately the identity of the father of a child. It states that "it is not intended to be a general support statute." The text in reference to Article 7 indicates that it is designed to be a simple proceeding to require parents to support their children. As we read 22-7-1(1), the inclusion of fathers of illegitimate children presupposes the prior establishment of the filial relationship. It is a general statute to compel support by *any* "legally responsible person." The comment in the Legislative Council report on 22-6-1(2) is significant. It reads:

"Subsection (2) limits action to establish identity of the father to within three years after the birth of the child. [amended to five years] If identity has been voluntarily established previously, an order of support may be issued under this article after the three year limitation. [amended to five years] Present limit is one year, with no provision for subsequent orders of support. Argument is offered that paternity proceedings should be possible until the child is eighteen as a means of protecting the child's right to support. Arguments against a long statute of limitations on paternity

rest on the increasing difficulty of proving paternity or nonpaternity with the passage of time."

■ Although this court in *Ortega v. Portales,* 134 Colo. 537, 307 P.2d 193, held that there was a continuing liability upon the father of a legitimate or illegitimate child to provide support and that the failure on the part of any person to act within a period of limitation could not deprive an infant of its right to continuing parental care and support, we have concluded that that decision is no longer applicable since the enactment of the Children's Code. It is clear from the above quoted comment as to 22-6-1(2) that the General Assembly intended to place a time limit within which proceedings could be brought to determine paternity where the putative father contests the mother's allegation of paternity. It should be noted that the predecessor statute (C.R.S. '53, 22-6-1) restricted the right to file a complaint against the putative father exclusively to the mother, whereas the Children's Code (1967 Perm. Supp., C.R.S. 1963, 22-6-1) grants the right "to establish the paternity of a child and to compel support under this article [to] the mother. . ., the child's guardian of the person, or, if the mother or the child is a public charge, [to] the county department of welfare."

We also note that in *Ortega* the Juvenile Court held that the claim was barred by the general three-year statute of limitations. No mention was made of the one-year limitation in Article 6. This court in determining whether the statute of limitations barred the prosecution of the act relied on the then existing statute relating to dependent and neglected children which imposed a continuing liability upon the father of a legitimate or illegitimate child to provide support until the child attained the age of 18 years. What conclusion the court might have come to had the one-year statute of limitations in C.R.S. '53, 22-6-6 been raised is not clear, but we assume that it would have relied on *Wamsley v. People,* 64 Colo. 521, 173 P. 425. In that case this court held that although a prosecution under one statute is barred because not brought in time, an action could be maintained under another statute for failure to support the illegitimate child.

.

Neither *Ortega* nor *Wamsley* indicates that the statute of limitations with which they were dealing was the one within the same article in which the right being pursued was created. This, in our opinion, has some significance in our disposition of this issue.

■ In the statutory scheme adopted in the Children's Code it is abundantly clear that the General Assembly intended Article 6 as the only vehicle for establishing paternity. For instance, 22-1-6(4)(a)(i) and (iii) grant the right to trial by jury in paternity proceedings under Article 6; this is not available to the putative father under Article 7. Also, under Section 4 of Article 6(22-6-4), upon the motion of the father, blood grouping tests may be ordered by the court and received in evidence, as provided in 1967 Perm. Supp., C.R.S. 1963, 52-1-27; this is not permissible under Article 7.

■ Although Article 7 is not the only article authorizing the court to issue support orders, it seems clear to us that it was not contemplated that any issue other than support was contemplated in a proceeding under Article 7. It presupposes that paternity has been established either by an Article 6 proceeding or by acknowledgment of paternity by the father in writing or by furnishing support. 22-6-1.

We now turn to the constitutional issue of equal protection of the law and our opinion in *Munn v. Munn,* 168 Colo. 76, 450 P.2d 68.

In *Munn,* the putative father contended that C.R.S. '53, 22-6-3, which delegated to the jury the responsibility for assessing damages for the support of the child, and directed "the same to be paid annually or otherwise for any term of years not exceeding eighteen," denied equal protection to paternity respondents when compared with proceedings under Article 7 which left the responsibility for determining the amount of support payable to the discretion of the court. Also, under Article 7 support orders could be modified to meet changed conditions, whereas under Article 6 the judgment entered on the jury's verdict remained constant regardless of any change in the circumstances of either the

child or the father.

*Munn* discussed *Levy v. Louisiana,* 391 U.S. 68, 88 S.Ct. 1509, 20 L.Ed.2d 436, and *Glona v. American Guarantee & Liability Insurance Company,* 391 U.S. 73, 88 S.Ct. 1515, 20 L.Ed.2d 441, in the context of the difference in the type of obligation imposed upon the father of an illegitimate child and that imposed upon the father (or others legally responsible) of a legitimate child.

Mr. Justice Pringle in reaching the conclusion in *Munn* that there was a denial of the constitutional equal protection guaranty, said "that the support obligation owed by a father to his legitimate child cannot differ substantially from the duty owed to his illegitimate child."

█ It appears to be clear that *Munn* was talking about the scope of a paternal *obligation* once its existence was established. Here we are talking about the period within which an action may be brought to determine whether a putative father is in fact the father and therefore obligated. The mother of the child born in lawful wedlock, or the mother of a child born outside the marriage relationship where the father acknowledges paternity in writing or by furnishing support, does not have the same burden as the mother of a child where the paternity is denied by the putative father. The difference in the two situations and the uncertainty of relationship attendant on illegitimacy is sufficient to justify treatment as two different classes for constitutional purposes. *See Weber v. Aetna Cas. & Surety Co.,* 40 U.S.L.W. 4460, 406 U.S. 164, 92 S.Ct. 1400, 31 L.Ed.2d 768.

█ It is well recognized and unquestioned that it is within the competence of the General Assembly to enact statutes of limitations. 51 Am.Jur.2d *Limitation of Actions* § 12. Statutes of this character are founded on state policy and are usually deemed to be a proper exercise of the powers of sovereignty. *Atchafalaya Land Co. v. Williams Co.,* 258 U.S. 190, 42 S.Ct. 284, 66 L.Ed. 559.

█ It is also within the competence of the legislature to put infants and adults upon the same footing with respect to

a limitation law, and this is the effect of a statute containing no savings clause exempting infants. 51 Am.Jur.2d 750; *Lametta v. Conn. Light & Power Co.,* 139 Conn. 218, 92 A.2d 731.

■■■ We therefore conclude that the mother could only bring actions to establish paternity for purposes of support under Article 6 and that having failed to bring them before the children, respectively, reached the age of five years, the actions were thereafter barred. This result is not in violation of the equal protection guaranty of the constitution.

Judgment is affirmed.

MR. CHIEF JUSTICE PRINGLE, MR. JUSTICE GROVES and MR. JUSTICE ERICKSON dissenting.

MR. CHIEF JUSTICE PRINGLE dissenting:

I respectfully dissent. In my view, the position which the majority takes makes Article 7 of the Children's Code unconstitutional. I firmly believe that the majority, by its action today, denies equal protection to "illegitimate" children. To say that a "legitimate" child may obtain judicial aid to require his father to support him at any time until his 18th birthday and that an "illegitimate" child cannot receive the same judicial aid unless he seeks it within five years of his birth is, in my view, invidious discrimination forbidden both by the United States Constitution and the Colorado Constitution. I said in *Munn v. Munn,* 168 Colo. 76, 450 P.2d 68, that it is the biological relationship and not the strained common law legal relationship which sets the class here and prohibits the state from drawing legal distinctions such as the majority approves here.

We have, it seems to me, now passed the time when we distinguish between so-called "illegitimate" children and "legitimate" children. *See Weber v. Aetna Casualty and Surety Company,* 44 U.S.L.W. 4460, announced April 25, 1972; *Levy v. Louisiana,* 391 U.S. 68, 88 S.Ct. 1509, 20 L.Ed.2d 436. In my view, however, the two statutes are not incompatible and properly applied, Article 7 would not be unconstitutional. There are entirely different remedies pro-

vided for in Article 6 than in Article 7. For instance, Article 7 affords only support money for the child. Article 6 provides, among other things, for necessary expenses incurred in connection with the confinement and for other expenses in connection with pregnancy. Article 6 establishes a remedy only against the father. Article 7 makes the remedy available not only against both parents but against other legally responsible persons as well. I think then that these remedies are mutually exclusive and that the five-year limitation does not apply in Article 7. Such an interpretation would then make Article 7 constitutional, in my view.

I am authorized to say that Mr. Justice Groves and Mr. Justice Erickson join in this dissent.