*See also, Weber v. Orr,* 274 Cal.App.2d 288, 79 Cal.Rptr. 297 (1969).

Finally, we adhere to the well-established rule that where specific and general statutes conflict, the provisions of the specific statute prevail. *See e.g., Weather Engineering and Manufacturing, Inc. v. Pinon Springs Condominiums, Inc.,* 192 Colo. 495, 563 P.2d 346 (1977); *Air Pollution Control Commission v. District Court,* 193 Colo. 146, 563 P.2d 351 (1977); *Burton v. Denver,* 99 Colo. 207, 61 P.2d 856 (1936). Although it is true that section 42–4–103(2)(b) provides for a specific category of exceptions to the general rule of section 42–4–103, it does not follow that there is a conflict with the more specific provisions of section 42–4–1202(3)(a). It was within the province of the legislature to create an exception to an exception through its exemption of the provisions of section 42–4–1202(3)(a) from the more general rule established in section 42–4–103(2)(b). Given the plain language of the implied consent statute, no other construction is warranted.

Accordingly, the court of appeals' decision in *McCoy v. Colorado Motor Vehicle Division* is reversed, and its decision in *Day-hoff v. Colorado Motor Vehicle Division* is affirmed.

ROVIRA, J., dissents.

GROVES, J., does not participate.

ROVIRA, Justice, dissenting:

I respectfully dissent.

I subscribe to the analysis of Judge Berman in his dissent in *Dayhoff v. Colorado Motor Vehicle Division,* Colo.App., 595 P.2d 1051 (1979), and to the majority opinion in *McCoy v. Colorado Motor Vehicle Division,* Colo.App., 595 P.2d 706 (1979), and little would be gained by restating that which has been well said.

In my view, legislative intent can best be ascertained by a close reading of the words of the statute, and where there is apparent conflict between two statutes, construction should go in the direction of public interest.

**B. G. and J. G., Children,**

**Upon the Petition of A. G., Petitioner,**

v.

**S. G., Respondent.**

**No. 79SC243.**

Supreme Court of Colorado, En Banc.

April 7, 1980.

Rehearing Denied April 28, 1980.

As Modified on Denial of Rehearing and Rehearing En Banc April 28, 1980.

Max P. Zall, City Atty., Frank A. Elzi, Asst. City Atty., Denver, for petitioner.

Robert C. Floyd, Denver, for respondent.

LOHR, Justice.

The wife, A.G. (petitioner), filed a petition for child support against the husband, S.G. (respondent), under section 19–7–101, C.R.S.1973 (now in 1978 Repl.Vol. 8). The juvenile court found for the wife and entered an order for support. The court of appeals reversed and ordered that the support petition be dismissed. We granted certiorari, and now reverse the court of appeals and direct that the support order entered by the juvenile court be reinstated.

Petitioner and respondent were married in 1946. The parties separated in December 1962 or 1963.[1] B.G., one of the children for whom support was sought, was born in 1964. In 1966 the petitioner obtained a decree of separation and an order restraining respondent from entering the house. J.G., the other child for whom support was sought, was born in 1968.[2] The parties were divorced in 1971[3] and in 1976 the petition for child support was filed.

The issue in this case is whether an action for support of a child who is born in wedlock and whose paternity is disputed can be maintained by the mother under Art. 7 of the Colorado Children's Code (Art. 7) in absence of a prior determination of paternity under Art. 6 of the Colorado Children's Code (Art. 6).[4] The issue may be crucial in the instant case because the statute of limi-

1. There is conflicting testimony as to when the parties separated. Petitioner claims in her brief on appeal that the respondent left her in December 1963. However, in a hearing before the trial court, she claimed they separated in 1966. Respondent testified that he was ejected from the family home in December 1962. The trial court made no finding of fact as to the date of separation.

2. It was argued in the court of appeals that the restraining order vitiated the presumption of legitimacy of the later-conceived child. The argument was not made in this court and we do not consider that possibility.

3. The order granting the divorce was entered in 1977, nunc pro tunc 1971.

4. All references to Arts. 6 and 7 are to the articles as they appear in C.R.S.1973 unless otherwise noted.

tations may have run on proceedings under Art. 6.[5]

Arts. 6 and 7 were enacted in 1967 as part of the Colorado Children's Code, which extensively revised and codified certain of the laws applicable to juveniles. Colo.Sess. Laws 1967, ch. 443, 22–1–1 at 993 *et seq.* In 1977, Art. 6 was replaced by the Uniform Parentage Act. Colo.Sess.Laws 1977, ch. 245, 19–6–101 at 1010 *et seq.* Art. 7 remains unchanged. The events relevant to the present case occurred prior to adoption of the Uniform Parentage Act.

Art. 6 creates a procedure to establish paternity of a child and to compel support by the father. Art. 7 creates a procedure to compel parents, "including fathers of illegitimate children or other legally responsible persons, to support a child or children." Section 19–7–101(1), C.R.S.1973. Art. 7 contains no express provisions for determination of paternity except to require that the court find "that the respondent has an obligation to support the child or children" (section 19–7–103(1), C.R.S.1973 (now in 1978 Repl.Vol. 8)) before any order for support may be entered.

The interrelation of Arts. 6 and 7 has received the attention of this court and of the court of appeals in *People in the Interest of L.B.*, 179 Colo. 11, 498 P.2d 1157 (1972), and *People in the Interest of R.M.*, 37 Colo.App. 209, 548 P.2d 1282 (1975). The juvenile court applied *R.M.* in permitting the Art. 7 action to proceed in absence of a prior determination of paternity. The court of appeals construed our decision in *L.B.* to require dismissal of the Art. 7 action in absence of a prior determination of paternity. We now turn to consideration of those two cases.

**5.** At the times relevant to the present case, an Art. 6 action could not have been initiated after a child became five years old unless paternity had been acknowledged by the father in writing or by furnishing support. Section 19–6–101(2), C.R.S.1973. The trial court did not find whether respondent acknowledged paternity in writing or by furnishing support. Even if that statute of limitations has run, the children themselves, or through representatives other

In *People in the Interest of L.B., supra,* an action for support was brought for children over the age of five who were conceived and born out of wedlock.[6] The putative father denied paternity. No proceeding to determine paternity had preceded the support action. We held that Art. 6 is the only vehicle for establishing paternity and that Art. 7 is designed to be a simple proceeding to require parents to support their children. We stated:

"Although Article 7 is not the only article authorizing the court to issue support orders, it seems clear to us that it was not contemplated that any issue other than support was contemplated in a proceeding under Article 7. It presupposes that paternity has been established either by an Article 6 proceeding or by acknowledgment of paternity by the father in writing or by furnishing support. 22–6–1."

179 Colo. at 17, 498 P.2d at 1160. Although the breadth of the language would extend to Art. 7 proceedings relating to children born in wedlock, the only children involved in *L.B.* were illegitimate children.

In *People in the Interest of R.M., supra,* the court of appeals considered the question now before us and held that an Art. 7 action with respect to children born in wedlock can be maintained in absence of a prior determination of paternity under Art. 6, notwithstanding a bare denial of paternity. The court of appeals held that the action could proceed until the putative father presented proof sufficient to overcome the presumption of legitimacy. In reaching this result the court of appeals carefully considered *L.B.* and distinguished it on the basis that only illegitimate children were involved in that case. We conclude that the court of appeals correctly

than their mother, may still be able to establish paternity under the Uniform Parentage Act. *See Department of Social Services v. D. A. G.,* —— Colo. ——, 607 P.2d 1004.

**6.** *L.B.* was based on sections 22–6–1 *et seq.,* C.R.S.1963 (1967 Perm.Supp.), and sections 22–7–1 *et seq.,* C.R.S.1963 (1967 Perm.Supp.). These provisions now appear as Arts. 6 and 7 of C.R.S.1973.

decided *R.M.* and that the holding of *L.B.* is not applicable to children born in wedlock.[7]

■ Our review of *L.B.*, *R.M.*, and Arts. 6 and 7 convinces us that the fact that the children were born out of wedlock was essential to the holding in *L.B.* Neither the legislature in Arts. 6 and 7 nor the court in *L.B.* envisioned the problem of contested paternity of a child born in wedlock.[8] Such a child is presumed to be legitimate because that child was born of a lawful marriage. *Lanford v. Lanford*, 151 Colo. 211, 377 P.2d 115 (1962).[9] That presumption, while one of the strongest presumptions known to the law, is not irrebuttable and may be overcome by proof that the husband was impotent or that he had no access to the wife at the time of conception. *Lanford v. Lanford, supra.*

■ A child who has the benefit of the strong presumption of legitimacy should reasonably be able to rely on that presumption absent a judicial action by the presumed father, challenging paternity. If *L.B.* were to be applied to children born in wedlock, it would be advisable for representatives of such a child to bring an Art. 6 proceeding before a child's fifth birthday in every case where paternity might be questioned and where any doubt might exist as to proof that the presumed father had acknowledged paternity or had provided support. *See* section 19–6–101(2), C.R.S.1973. Such a rule would promote unnecessary litigation. It would be disruptive of family relationships contrary to the basic purposes of the Colorado Children's Code [10] and contrary to the public policy underlying the presumption of legitimacy.[11] We do not believe the legislature intended such result, and the statutory language does not compel it.

■ We conclude that the fact that an Art. 6 proceeding was not brought within the time permitted by section 19–6–101(2), C.R.S.1973, does not bar an Art. 7 proceeding with respect to children born in wedlock. In such a case the presumed father must be permitted to deny an obligation to support the child (*see* section 19–7–103, C.R.S.1973) by denying paternity, and that issue must be resolved in the Art. 7 proceeding. This result is not inconsistent with the holding in *L.B., supra.* To the extent that the reach of the language in *L.B. supra,* can be understood to be contrary to our holding in the instant case, we hereby limit the applicability of that language.

The reasoning of the court of appeals in *R.M.* is compelling. The Colorado Children's Code is to be construed "favorably to the best interests of the child and society." *Denver v. Juvenile Court*, 182 Colo. 157, 511 P.2d 898 (1973). It would certainly not be in the best interests of the child or society to dismiss an action for support of a child over the age of five born in wedlock simply because the father denied paternity.

We reverse and remand to the court of appeals for reinstatement of the support order of the juvenile court.

7. This is also consistent with *People in the Interest of A. M. D.*, 20 Colo.App. 202, 481 P.2d 123 (1971), in which an Art. 7 action was permitted with respect to a child conceived during a marriage but born after a divorce. Paternity was disputed and no determination of paternity had been made prior to Art. 7 proceeding. The question of the need for such determination was not raised.

8. The Uniform Parentage Act deals expressly with the times within which an action may be brought to declare the existence or nonexistence of the father and child relationship in situations in which a presumption of paternity exists. Section 19–6–107(1), –107(2), C.R.S. 1973 (1978 Repl.Vol. 8).

9. That presumption has been codified and expanded in the Uniform Parentage Act. Section 19–6–105, C.R.S.1973 (1978 Repl.Vol. 8).

10. Section 19–1–102, C.R.S.1973, provides in pertinent part:

"(1) The general assembly declares that the purposes of this title are:

. . . . .

(b) To preserve and strengthen family ties whenever possible, including improvement of home environment."

11. One feature of that public policy is protection of the family unit. *Lanford v. Lanford, supra.*