**The PEOPLE of the State of Colorado
In the Interest of R.T.L.,
Child–Petitioner.**

**Upon the Petition of ARAPAHOE
COUNTY DEPARTMENT OF
SOCIAL SERVICES,**

**and Concerning: R.L., Respondent.**

**No. 88SC28.**

Supreme Court of Colorado,
En Banc.

Oct. 2, 1989.
Rehearing Denied Oct. 23, 1989.

---

Robert R. Gallagher, Jr., Dist. Atty., and Catherine P. Adkisson, Chief Deputy Dist. Atty., Littleton, for child-petitioner.

Lozow, Lozow and Elliott, Jon P. Lozow, and David M. Gibans, Denver, for respondent.

Justice LOHR delivered the Opinion of the Court.

We granted certiorari to review the decision of the Colorado Court of Appeals in *People in the Interest of R.T.L.*, 756 P.2d 383 (Colo.App.1987), affirming the entry of summary judgment in a child support proceeding in favor of R.L., the presumed father of a minor child, and against the People, acting through the Arapahoe County Department of Social Services (Department). The Department initiated this action to obtain a court order that R.L. provide support for the minor child and reimburse the Department for public assistance funds previously expended for the benefit of the child. R.L. filed a motion to dismiss, or in the alternative for summary judgment, asserting that he was not the father of the child and therefore had no obligation for support. The trial court granted R.L.'s motion for summary judgment and dismissed the Department's petition for support on the ground that the materials submitted in support of the motion established that R.L. was not the father and presented

no genuine issue of material fact on that question. The court of appeals affirmed, and the Department petitioned this court for certiorari review. We now affirm the judgment of the court of appeals, although for reasons other than those set forth in the court of appeals' opinion.

I.

On December 12, 1978, the Denver District Court entered a decree dissolving the marriage of C.L. and R.L. The wife, C.L., was granted custody of the couple's two minor children. At the time of the dissolution of their marriage, C.L. was unaware that she was pregnant. On September 2, 1979, some 264 days after the dissolution decree was entered, C.L. gave birth to R.T.L., the child for whose benefit this case was brought. R.L. was named as the father on the child's birth certificate.

Sometime in late 1979, C.L. advised R.L. that she had recently given birth to a child. She further advised him that she had named the child after him but that he was not the child's father. On March 2, 1986, R.L. and C.L. stipulated to an amended decree of dissolution of their marriage "to indicate that [C.L.] was pregnant at the time of the entry of the Decree of Dissolution, but not with issue of the marriage between [R.L. and C.L.]." Neither R.T.L. nor the Arapahoe County Department of Social Services, the petitioner in the instant case, was joined as a party to the action in which the amended dissolution decree was entered.

On April 4, 1986, more than six years after R.T.L.'s birth, the Department filed this support proceeding pursuant to Article 6 of the Colorado Children's Code, §§ 19–6–101 to 19–6–106, 8B C.R.S. (1988 Supp.),[1] against R.L. in the Arapahoe County Dis-

1. At the time this action was initiated, the pertinent statutory provisions were found in Articles 6 (Uniform Parentage Act) and 7 (Support Proceedings) of the Colorado Children's Code, §§ 19–1–101 to 19–11–110, 8 C.R.S. (1978). In 1987, Article 6 was repealed and reenacted as Article 4 of the Colorado Children's Code. Ch. 138, sec. 1, §§ 19–4–101 to 19–4–127, 1987 Colo. Sess.Laws 695, 793–800. By the same legislative bill, Article 7 was repealed and reenacted as Article 6 of the Code. Ch. 138, sec. 1, §§ 19–6–

101 to 19–6–106, 1987 Colo.Sess.Laws 695, 811–12. For purposes of resolving this controversy, the substance of the provisions contained in the most recent versions of Articles 4 and 6 are the same as the versions in effect when this action began. Consequently, we refer throughout this opinion to the most recent versions of Articles 4 and 6 (formerly Articles 6 and 7), which are found in the Colorado Children's Code, §§ 19–1–101 to 19–6–106, 8B C.R.S. (1988 Supp.).

trict Court. The petition sought recovery of child support in reimbursement for public assistance funds the Department had paid from March 1980 to February 1986 to benefit R.T.L.[2] R.L. responded by moving for dismissal of the action or alternatively for summary judgment on the ground that he was not the biological father of R.T.L. and therefore owed no duty to contribute to the child's support. In support of his motion, R.L. filed three documents. These consisted of an affidavit in which he stated that he had not had sexual relations with C.L. since the parties separated in September or October of 1977; a partial transcript of a deposition of C.L. taken in June of 1985 in which she stated that R.L. was not the father of R.T.L.; and a copy of the amended dissolution decree issued by the Denver District Court stating that R.L. was not the father of R.T.L. In its response to R.L.'s motion, the Department argued that R.L.'s defense of nonpaternity was barred by the five-year statute of limitations contained in section 19–4–107(1)(b), 8B C.R.S. (1988 Supp.). The trial court granted R.L.'s motion, reasoning that the issue of whether R.L., as R.T.L.'s presumptive father, could deny paternity in an Article 6 support action had been resolved in the case of B.G. v. S.G., 199 Colo. 403, 609 P.2d 121 (1980).

The court of appeals affirmed the trial court's dismissal of the Department's action, concluding that although B.G. v. S.G. was decided under a previous version of the applicable statutory scheme, the rationale of that case still supported the outcome reached by the trial court. R.T.L., 756 P.2d at 384. The court of appeals therefore held that the defense of nonpaternity asserted in an Article 6 support action is not barred by the Article 4 statute of limitations contained in section 19–4–107(1)(b), 8B C.R.S. (1988 Supp.). Id. We granted certiorari to review this conclusion.

## II.

### A.

The issue before us is whether the statute of limitations found in section 19–4–107(1)(b), of the Uniform Parentage Act (U.P.A.), §§ 19–4–101 to 19–4–129, 8B C.R.S. (1988 Supp.), precludes a presumed father from asserting nonpaternity as a defense in a child support proceeding brought under Article 6 of the Colorado Children's Code (Children's Code), §§ 19–6–101 to 19–6–106, 8B C.R.S. (1988 Supp.), more than five years after the birth of the child. A review of the statutory framework governing paternity and support actions will provide the background necessary for an understanding of this issue.

The Children's Code contains two articles of potential applicability to the issues raised in this case: Article 6, regarding proceedings for enforcement of child support obligations, and Article 4, the U.P.A., regarding the legal establishment of parent-child relationships. Our principal focus in the present case is upon the construction and interaction of relevant provisions of the U.P.A.

In 1977, the General Assembly adopted the U.P.A.,[3] which is now found in Article 4 of the Children's Code, §§ 19–4–101 to 19–4–129, 8B C.R.S. (1988 Supp.). The U.P.A. was designed to provide "substantive legal equality for all children regardless of the marital status of their parents" and to identify "the person against whom [the children's] rights may be asserted." Unif. Parentage Act, 9B U.L.A. 289 (1987) (Commissioners' Prefatory Note). In order to identify the father of a child whose paternity has not been established, the U.P.A. "sets up a network of presumptions which cover cases in which proof of external circumstances (in the simplest case, marriage between the mother and a man) indicate a

---

**2.** The parties state that in 1985 the Department filed a paternity action in the Arapahoe County District Court on behalf of R.T.L. and against R.L. and two other named respondents. The district court apparently dismissed this action with prejudice as to all three respondents. However, no record of this proceeding was ever

transmitted to this court. We therefore cannot determine what effect, if any, the Arapahoe County proceeding had on the instant action.

**3.** Ch. 245, sec. 1, §§ 19–6–101 to 19–6–129, 1977 Colo.Sess.Laws 1010, 1010–18.

particular man to be the probable father." *Id.* These statutory presumptions find their source in the common and statutory law existing at the time the U.P.A. was promulgated, and "[a]ll … are rebuttable in appropriate circumstances." *Id.*

The U.P.A. presumption of particular importance to the instant case is found in section 19–4–105(1)(a). That section provides:

(1) A man is presumed to be the natural father of a child if:

(a) He and the child's natural mother are or have been married to each other and the child is born during the marriage, within three hundred days after the marriage is terminated by death, annulment, declaration of invalidity of marriage, dissolution of marriage, or divorce, or after a decree of legal separation is entered by a court[.]

§ 19–4–105(1)(a).[4] Any presumption of paternity established under section 19–4–105 may be rebutted in an appropriate action by clear and convincing evidence or by a court decree establishing paternity of the child by another man. § 19–4–105(2).

In addition to presumptions of paternity, the U.P.A. contains provisions governing who may bring actions to determine the father and child relationship and when such actions may be brought. Section 19–4–107(1) provides:

(1) A child, his natural mother, or a man presumed to be his father under section 19–4–105(1)(a), (1)(b), or (1)(c) or the state, the state department of social services, or a county department of social services … may bring an action:

(a) At any time for the purpose of declaring the *existence* of the father and child relationship presumed under section 19–4–105(1)(a), (1)(b), or (1)(c); or

(b) For the purpose of declaring the *nonexistence* of the father and child relationship presumed under section 19–4–105(1)(a), (1)(b), or (1)(c) only if the action is brought within a reasonable time after obtaining knowledge of relevant facts, but *in no event later than five years after the child's birth.* After the presumption has been rebutted, paternity of the child by another man may be determined in the same action, if he has been made a party.

(Emphasis added.) Under this section, "[a]ttack on the presumptions based on marriage or on a relationship between the parents that resembles marriage is restricted to a limited circle of potential contestants and in point of time. Presumptions created in other circumstances may be attacked more freely." Unif. Parentage Act § 6, 9B U.L.A. 302 (1987) (Commissioners' Comment).

Although section 19–4–107(1)(a) states that an action for the purpose of declaring the *existence* of the father and child relationship presumed under section 19–4–105(1)(a), (1)(b), or (1)(c) may be brought at any time, section 19–4–108 makes clear that such an action initiated by the mother or father of a child or the "delegate child support enforcement agency" must be brought before the child's eighteenth birthday. If a child whose paternity has not been established initiates an action to declare the *existence* of the father and child

---

**4.** A man is also presumed to be the natural father of a child if 1) the child was born after he and the child's mother attempted to marry in apparent compliance with the law, § 19–4–105(1)(b); 2) the child was born before he and the child's mother have married or attempted to marry in apparent compliance with the law and he has filed an acknowledgment of his paternity with the appropriate authority or is named as the child's father on the birth certificate with his consent, § 19–4–105(1)(c)(I) & (II); 3) the child was born before he and the child's mother have married or attempted to marry in apparent compliance with the law and he is obligated to support the child under either a written voluntary promise or by court order, § 19–4–105(1)(c)(III); 4) he received the child into his home and openly held the child out as his natural child while the child was a minor, § 19–4–105(1)(d); 5) he filed a written acknowledgment of his paternity of the child with the appropriate authority and the mother did not dispute the acknowledgment within a reasonable time, § 19–4–105(1)(e); 6) as the result of properly administered blood tests he is shown with ninety-seven percent probability or higher to be the probable father, § 19–4–105(1)(f). In summarizing these statutory presumptions, some detail and certain qualifications have been omitted.

relationship, the action may be brought at any time prior to the child's twenty-first birthday. § 19-4-108.

### B.

It is clear from sections 19-4-105(1)(a) and 19-4-107(1)(b) that a man presumed to be a child's father by reason of his marriage to the child's mother at the time of conception is precluded from *initiating* an action to declare the *nonexistence* of the presumed father and child relationship after the child reaches the age of five. *See People in the Interest of S.L.H.*, 736 P.2d 1226 (Colo.App.1986) (notwithstanding a mother's acknowledgment that her ex-husband is not the child's father, an ex-husband is barred from seeking declaration of nonpaternity when child is over five years old). However, the Department urges us to take the time limitation contained in section 19-4-107(1)(b) one step further. The Department contends that "the legislative intent behind the U.P.A. and the best interests of the child" further preclude a presumed father from asserting his nonpaternity as a *defense* in a paternity or support action brought against him after the child's fifth birthday. R.L. opposes the Department's proposed construction of section 19-4-107(1)(b) on two grounds.[5] First, he argues that by its terms, section 19-4-107(1)(b) applies only to actions *brought* to establish nonpaternity and not to the raising of the defense of nonpaternity in support actions. Therefore, he argues, under settled principles of statutory construction, section 19-4-107(1)(b) is inapplicable to the instant case. R.L.'s second argument, adopted by the court of appeals, is that the holding in *B.G. v. S.G.*, 199 Colo. 403, 609 P.2d 121 (1980), controls the outcome in this case.

### 1.

Although we agree with R.L. that section 19-4-107(1)(b) by its terms does not preclude the assertion of nonpaternity as a defense to a support action brought more than five years after the child's birth, we do not regard *B.G. v. S.G.* as mandating this result. In *B.G.*, the mother of two children born in wedlock brought a support action under what was at that time Article 7 of the Children's Code, §§ 19-7-101 to 19-7-104, 8 C.R.S. (1973),[6] against the man to whom she was married when the children were born. The ex-husband denied paternity. The issue in the case was whether an action for support of a child who is born in wedlock and whose paternity is disputed could be maintained under Article 7 of the Children's Code in the absence of a prior determination of paternity under what was then Article 6 of the Code, §§ 19-6-101 to 19-6-107, 8 C.R.S. (1973).[7] The issue was crucial because the children for whom support was sought were over five years of age and at that time, absent special circumstances, an Article 6 paternity action could not be initiated after the child's fifth birthday. § 19-6-101(2), 8B C.R.S. (1988 Supp.). The juvenile court found for the mother and ordered that the ex-husband pay child support. The court of appeals in an unreported opinion reversed, reasoning that the mother could not maintain an Article 7 support action without first seeking a determination of paternity pursuant to Article 6.

We accepted certiorari and reversed the court of appeals. We first acknowledged that with respect to children born out of wedlock whose paternity is disputed, an Article 7 support action cannot be maintained in the absence of a prior determination of paternity under Article 6. *People in the Interest of L.B.*, 179 Colo. 11, 498 P.2d 1157 (1972), *appeal dismissed*, 410

---

5. R.L. also contends that if § 19-4-107(1)(b) is construed to preclude his right to assert the defense of nonpaternity in this action, that section violates the equal protection clauses of the United States and Colorado Constitutions, and the due process clauses of the United States and Colorado Constitutions. Because we resolve the issue presented here in favor of R.L. on statu-

tory construction grounds, we need not address these other arguments.

6. Article 7 was the statutory predecessor to the current Article 6. *See* note 1, above.

7. Article 6 was the pre-U.P.A. statutory scheme governing paternity proceedings.

U.S. 976, 93 S.Ct. 1497, 36 L.Ed.2d 173 (1973). However, we concluded that a child born in wedlock has the benefit of a strong presumption of legitimacy upon which he should reasonably be able to rely in an Article 7 support proceeding, even absent a prior Article 6 determination of paternity. Thus, the Article 6 time limitation contained in section 19–6–101(2), 8B C.R.S. (1988 Supp.), was inapplicable to and did not bar the mother's Article 7 support action. We also noted that the presumed father in an Article 7 support proceeding must be permitted to deny an obligation to support the child by denying paternity and that the paternity issue must be resolved in the support proceeding.

*B.G.* established that under the former statutory scheme it was unnecessary to adjudicate paternity in an Article 6 proceeding before seeking child support in an Article 7 proceeding in circumstances where a presumption of paternity exists based upon birth of the child during a marriage between the mother and the presumed father. We do not regard this holding to be dispositive of the present case. The statutory scheme at issue in *B.G.* preceded the adoption of the U.P.A. and contained no presumption of legitimacy similar to that found in the present section 19–4–105(1)(a).[8] Rather, the presumption we applied in *B.G.* had its source and definition in the common law. *B.G.*, 199 Colo. at 406–07, 609 P.2d at 123. By applying the common-law presumption, a paternity determination could be made within the confines of an Article 7 support proceeding without resort to the statutory provisions of Article 6.

The rationale underlying *B.G.* is inapplicable in this case. Since *B.G.* was decided, the legislature has codified and refined the presumption of legitimacy at issue in *B.G.*, and has set forth many other presumptions of paternity within the U.P.A. *See* note 4,

above, and accompanying text. Under the present statutory scheme, the U.P.A. provides the procedures by which a paternity determination is to be made when paternity is disputed. In the absence of a paternity determination, no child support order can be made against a putative father pursuant to Article 6 unless paternity is uncontested. This is so because before any support order can be entered under Article 6, the court must find that the person from whom support is sought is a parent or other person legally obligated to support the child. *See* § 19–6–101(1) and 19–6–104(1), 8B C.R.S. (1988 Supp.).

This is not to say that an independent action under the U.P.A. must precede an Article 6 support proceeding. Rather, in cases in which paternity is disputed, whether in an Article 4 or Article 6 proceeding, paternity must be determined according to the procedures outlined under the U.P.A. before the legal obligation for support can be imposed. *Smith v. Casey*, 198 Colo. 433, 435, 601 P.2d 632, 634 (1979) (when paternity issue is raised in dissolution action, court must first determine, using procedures outlined under U.P.A., whether party to be charged owes duty of support to child); *see also In re Marriage of Burkey*, 689 P.2d 726, 728 (Colo.App.1984) (res judicata does not apply to paternity finding in dissolution action in which paternity was contested because procedures of U.P.A. were not followed in that action); 1 S. Shatkin, *Disputed Paternity Proceedings*, § 15.01, at 15–3 (rev. 4th ed. 1988) ("Establishment of paternity is the essential prerequisite to imposing any obligation for child support."). Given the present statutory scheme, it can no longer be said where paternity is contested that an Article 6 support order can be entered absent a paternity determination made within the

---

8. In addition, the five-year limitation in the paternity statutes under consideration in *B.G.* applied only to proceedings to *establish* paternity, for the Article 6 paternity statutes then in effect contained no provisions for proceedings to declare the *nonexistence* of a presumed father and child relationship. Therefore, there was no basis for an argument such as the one advanced

by the People in the instant case that an inference can be drawn from a statutory limitation on the time within which an action to declare the nonexistence of a presumed father and child relationship may be brought that a nonpaternity *defense to a support action can be asserted only* within that same limited time.

framework provided by the U.P.A.[9]

### 2.

Having concluded that the U.P.A., including its five-year limitation on actions contained in section 19–4–107(1)(b), applies in an Article 6 proceeding in which paternity is contested, we turn now to the construction of section 19–4–107(1)(b). We conclude that the interpretation of that statute urged by the Department is unsound as a matter of statutory construction.

It is a well-established principle of statutory construction that statutes are to be given effect according to their plain and ordinary meaning. *Parrish v. Lamm,* 758 P.2d 1356, 1368 (Colo.1988); *Charnes v. Lobato,* 743 P.2d 27, 30 (Colo.1987). Section 19–4–107(1)(b), by its plain language, states that certain parties "may *bring an action* ... [f]or the purpose of declaring the nonexistence of the father and child relationship ... only if the *action is brought* within a reasonable time after obtaining knowledge of relevant facts, but in no event later than five years after the child's birth." Nowhere does the statute limit the time within which a presumed father may assert as a defense the nonexistence of the father and child relationship. Consequently, this case falls squarely within the general rule "that a statute of limitations, although barring the use of a claim for affirmative relief after the limitations period has run, is not a bar to asserting that claim as a defense." *Dawe v. Merchants Mortgage and Trust Corp.,* 683 P.2d 796, 800 (Colo.1984) (three-year statute of limitations on recoupment claims contained in 15 U.S.C. § 1635(f) does not bar a defensive plea of recoupment based on right to rescind a land transaction under Federal Truth In Lending Act); *see also Ackmann v. Merchants Mortgage & Trust Corp.,* 645 P.2d 7, 20 (Colo.1982) (general rule applies where an allegedly untimely claim of violation of disclosure provisions of Interstate Land Sales Full Disclosure Act is raised as a defense to a suit on a promissory note).

A construction of section 19–4–107(1)(b) under which a nonpaternity defense is precluded after the child reaches five years of age would require a strained and awkward reading of the statute. Moreover, it would effectively convert the rebuttable presumption of paternity in the husband of the child's natural mother into a conclusive presumption.[10] Were such a conclusive presumption to operate, a presumed father would be required to bring an Article 4 proceeding to declare the nonexistence of the father and child relationship before the child's fifth birthday or forever lose his right to deny paternity. Such a procedure would foster needless litigation in circumstances in which no contention is being advanced that a father and child relationship exists. Moreover, a conclusive presumption would provide a party seeking to

---

**9.** The Department brought this action on behalf of the child, R.T.L. None of the parties questions the sufficiency of this procedure to make the child "a party to the action" in order to enable the court to make a determination of nonpaternity for the purpose of this support proceeding. *See* § 19–4–110, 8B C.R.S. (1988 Supp.) (child must be made party to paternity action under U.P.A.); *Smith v. Casey,* 198 Colo. at 435–36, 601 P.2d at 634 (child is indispensable party to paternity action).

**10.** We have previously declined to convert the presumption embodied in § 19–4–105(1)(a) into a conclusive presumption against a natural father claiming parental rights to a child born during the mother's marriage to another man. *R.McG. v. J.W.,* 200 Colo. 345, 615 P.2d 666 (1980) (construing § 19–6–105(1)(a), 8 C.R.S. (1978), which is the statutory predecessor to the present version of § 19–4–105(1)(a)). In *R.McG.,* we held that so long as the U.P.A. grants a natural mother judicial access for a period of years to seek a determination of paternity against the natural father of a child born during the marriage of·the mother to another, equal protection of the laws under the United States and Colorado Constitutions mandates that the natural father be granted judicial access and standing to establish his paternity during that same time period. *R.McG.,* 200 Colo. at 352–53, 615 P.2d at 671. In so holding, we stated that a "[p]rocedure by presumption is permissible, but when that procedure 'forecloses the determinative issues ... [and] explicitly disdains present realities in deference to past formalities, it needlessly risks running roughshod over the important interests of both parent and child.'" *R.McG. v. J.W.,* 200 Colo. 345, 352, 615 P.2d 666, 671 (1980) (quoting *Stanley v. Illinois,* 405 U.S. 645, 657, 92 S.Ct. 1208, 1215, 31 L.Ed.2d 551 (1972)).

hold the presumed father responsible for support of the child with incentive to delay bringing a support action until the child reaches five years of age, thus depriving the presumed father of any opportunity to contest paternity. We decline to impute to the General Assembly an intent to enact a statute that would encourage litigation, promote delay and uncertainty, and increase the possibility of an erroneous determination of the question of paternity.[11] Such untoward results could hardly be considered consistent with the purposes of the Children's Code to serve the welfare of children and the best interests of society. *See* § 19–1–102(1) and (2), 8B C.R.S. (1988 Supp.).[12]

The case at bar amply demonstrates how a conclusive presumption would engender inequitable results. Here, the child was born almost nine months after the parties' marriage had been dissolved and almost two years after the parties had separated. There was no evidence that C.L. ever indicated to R.L. that he had fathered R.T.L. or that he would one day be held responsible for the child's support. On the contrary, C.L. told R.L. that he was not the father, made a similar denial of R.L.'s paternity in a deposition, and voluntarily entered into a stipulated amended dissolution decree to disavow R.L.'s paternity of the child. Given these actions and representations, R.L. had no reason to believe that he would have to act quickly to disavow paternity of the child or be conclusively presumed to be the child's father.

We conclude that an interpretation of section 19–4–107(1)(b) that would deny the right of a presumptive father to defend against a child support action by asserting the nonexistence of a father and child relationship runs counter to principles of statutory construction and would produce results not consistent with the welfare of the affected children and the best interests of society. Accordingly, we hold that in an Article 6 child support action the defense of nonpaternity may be asserted by a man presumed to be the father pursuant to section 19–4–105(1)(a) notwithstanding that the man would have been precluded by section 19–4–107(1)(b) from bringing an action under Article 4 to declare the nonexistence of the father and child relationship because of the passage of time.[13]

MULLARKEY, J., dissents.

MULLARKEY, Justice, dissenting:

I respectfully dissent. Section 19–4–105(1)(a) (establishing a presumption of pa-

11. We acknowledge that the presumption that a child born during wedlock is the legitimate child of the marriage was one of the strongest presumptions known to the common law. *B.G. v. S.G.*, 199 Colo. at 407, 609 P.2d at 123; *Lanford v. Lanford*, 151 Colo. 211, 214, 377 P.2d 115, 116 (1962). The common-law presumption was not irrebuttable, however, and could be overcome with proof that the husband was impotent or that he had no access to the wife at the time of conception. *B.G. v. S.G.*, 199 Colo. at 407, 609 P.2d at 123; *Lanford*, 151 Colo. at 214, 377 P.2d at 116. Likewise, the statutory presumption is specifically provided to be rebuttable in an appropriate action by clear and convincing evidence. § 19–4–105(2).

12. § 19–1–102, 8B C.R.S. (1988 Supp.), of the Children's Code provides in pertinent part:
    (1) The general assembly declares that the purposes of this title [19] are:
    (a) To secure for each child subject to these provisions such care and guidance, preferably in his own home, as will best serve his welfare and the interests of society;
    (b) To preserve and strengthen family ties whenever possible, including improvement of home environment;

. . . . .

(2) To carry out these purposes, the provisions of this title shall be liberally construed to serve the welfare of children and the best interests of society.

13. Contrary to the Department's assertions, construing the five-year statute of limitations as barring only the bringing of actions to declare the nonexistence of the father and child relationship does not foreclose the Department from recovering against another man in the event that the presumed father successfully rebuts paternity. Rather, once the presumption has been rebutted, paternity of the child by another man may be determined in the same action if the man has been made a party, § 19–4–107(1)(b), or in a separate action brought at any time up to the child's eighteenth or twenty-first birthday, depending upon the person or entity by which the proceeding is brought, § 19–4–108. Consequently, the ultimate financial burden will fall on the child's biological father, or if he cannot be located, on the taxpayers. However, the burden will not fall on a presumed father who can rebut the presumption by clear and convincing evidence.

ternity) and section 19–4–107(1)(b) (limiting the period within which a nonpaternity action must be brought), 8B C.R.S. (1988 Supp.), should be read together so as to preclude a presumed father from raising the defense of nonpaternity in an action for child support after the five year statute of limitations has run. Accordingly, I would reverse.

The majority concludes that the five year statute of limitations on nonpaternity claims does not bar a presumed father from asserting nonpaternity as a defense in a child support action instituted against him more than five years after the child's birth. Under its analysis, the statute of limitations applies only to an action for nonpaternity brought by the presumed father. I do not find that construction consistent with the Uniform Parentage Act (U.P.A.), sections 19–4–101 to 19–4–129, 8B C.R.S. (1988 Supp.), and I believe the majority's interpretation will vitiate the five year statute of limitations for nonpaternity actions.

Section 4 of the U.P.A. creates certain presumptions regarding who bears the parental obligations as a child's father. Section 19–4–105, 8B C.R.S. (1988 Supp.). Section 6 of the U.P.A., section 19–4–107, 8B C.R.S. (1988 Supp.), establishes who may bring an action to assert either paternity or

nonpaternity and, in certain instances, limits the time within which an action may be brought. Section 19–4–107(1) permits a child, his natural mother, a man presumed to be his father under section 19–4–105(1)(a), (1)(b) or (1)(c),[1] the State, the Department of Social Services or a county department of social services to bring an action to establish paternity or nonpaternity under various circumstances. Subsection (a) permits an action to be brought at any time to establish *paternity* whereas subsection (b) requires that an action to establish *nonpaternity* be brought within five years of the child's birth.[2] The different time limits on actions to establish paternity and actions to establish nonpaternity reflect a legislative judgment that there is a fundamental difference between the two types of actions. The basic purpose of the U.P.A. is to promote and protect the legitimacy of children. By allowing a much shorter period to bring a nonpaternity action, the act clearly has struck a balance in favor of the child, elevating his interests over that of the presumed father.

Another U.P.A. state, Minnesota, emphasized this point in construing its three year nonpaternity statute of limitations as follows:

> The obvious intent of the three-year statute of limitations is to make the pre-

---

1. Section 19–4–105 provides, in relevant part:

   **Presumption of paternity.** (1) A man is presumed to be the natural father of a child if:

   (a) He and the child's natural mother are or have been married to each other and the child is born during the marriage, within three hundred days after the marriage is terminated by death, annulment, declaration of invalidity of marriage, dissolution of marriage, or divorce, or after a decree of legal separation is entered by a court;

   (b) Before the child's birth, he and the child's natural mother have attempted to marry each other by a marriage solemnized in apparent compliance with law, although the attempted marriage is or could be declared invalid; and

   (I) If the attempted marriage could be declared invalid only by a court, the child is born during the attempted marriage or within three hundred days after its termination by death, annulment, declaration of invalidity of marriage, dissolution of marriage, or divorce; or

   (II) If the attempted marriage is invalid without a court order, the child is born within three hundred days after the termination of cohabitation;

   (c) After the child's birth, he and the child's natural mother have married, or attempted to marry, each other by a marriage solemnized in apparent compliance with law, although the attempted marriage is or could be declared invalid; and

   (I) He has acknowledged his paternity of the child in writing filed with the court or registrar of vital statistics;

   (II) With his consent, he is named as the child's father on the child's birth certificate; or

   (III) He is obligated to support the child under a written voluntary promise or by court order; ....

2. As the majority correctly observes, however, actions to establish paternity are limited elsewhere in the statute. *See* maj. op. at 511 (paternity action on behalf of child must be brought within 18 years; paternity action by child must be brought within 21 years).

-sumption of legitimacy conclusive once a child reaches three years of age. The three-year statute of limitations is absolute in that it bars action *even if* the presumed father obtains knowledge of illegitimacy after the running of the statute.

*Pierce v. Pierce*, 374 N.W.2d 450, 452 (Minn.Ct.App.1985) (emphasis in original). In a subsequent case, the same court in *Clay v. Clay*, 397 N.W.2d 571, 577 n. 3 (Minn.Ct.App.1986), *appeal dismissed, Clay v. Clay*, 484 U.S. 804, 108 S.Ct. 49, 98 L.Ed.2d 14 (1987), explained why the U.P.A. treats declarations of paternity differently from nonpaternity actions:

> Public policy is served when a party has 19 years to seek adjudication of parentage, which adjudication establishes a parent/child relationship with all its attendant legal and social benefits for the child. Conversely, that same public policy is served when a party must within three years after a child's birth bring an action to declare non-parentage, when parentage has been presumed by law because of marriage or attempted marriage, and such declaration of non-parentage would deprive a child of legal and social benefits previously enjoyed.

The *Clay* case involved facts similar to the case now before us. Clay was the presumed father of the child T.C. because T.C. was born in 1981 while Clay was married to T.C.'s mother. The parents were divorced in 1982 and T.C.'s paternity was not contested in that proceeding. In 1985, Clay brought a nonpaternity action and the county brought a separate action against Clay seeking child support for T.C. The Minnesota Court of Appeals held that Clay was barred from asserting that he was not T.C.'s father because the three year statute of limitations had run. The court concluded that "[p]ermitting a challenge to the legitimacy of a child more than three years after its birth would defeat the statutory purpose of promoting legitimacy." *Id.* at 577 (footnote omitted). The court went on to uphold the constitutionality of its application of the statute of limitations.

These Minnesota cases are particularly important in analyzing the issue presented by this case because of section 19–4–126, 8B C.R.S. (1986 Repl.Vol.) which requires this court to construe the U.P.A. "to effectuate its general purpose to make uniform the law with respect to the subject of this article among states enacting it." As the *Clay* case indicates, the presumptions of paternity created by the U.P.A. are not mere evidentiary presumptions. If a paternity presumption is not contested within the five year period of the statute of limitations, then the presumed father must bear the obligations of paternity as a matter of substantive law.

The substantive nature of paternity presumptions was addressed in a recent United States Supreme Court decision, *Michael H. v. Gerald D.*, —— U.S. ——, 109 S.Ct. 2333, 105 L.Ed.2d 91 (1989). In *Michael H.*, the petitioner sought to have himself declared to be the father of a child, Victoria. It was undisputed that Michael H. was Victoria's natural father and that Victoria's mother was married to another man at all relevant times. California has adopted the U.P.A. in modified form.[3] Unlike Colorado, California, through § 621 of its evidence code, has made certain of the U.P.A. § 4 presumptions (*e.g.*, the California equivalent of our section 19–4–105(1)) irrebuttable. Section 621 states, in relevant part, as follows:

> (a) Except as provided in subdivision (b), the issue of a wife cohabiting with her husband, who is not impotent or sterile, is conclusively presumed to be a child of the marriage.

> (b) Notwithstanding the provisions of subdivision (a), if the court finds that the conclusions of all the experts, as disclosed by the evidence based upon blood tests performed pursuant to Chapter 2 (commencing with Section 890) of Division 7 are that the husband is not the father of the child, the question of paternity of the husband shall be resolved accordingly.

When the conclusive presumption established by § 621 does not apply, such as

---

**3.** *See* Cal.Civ.Code Ann. § 7000, *et seq.* (West 1983).

when the child is born to a wife not cohabitating with her husband, then the normal rebuttable presumption of U.P.A. § 4 applies. *Vincent B. v. Joan R.*, 126 Cal. App.3d 619, 625, 179 Cal.Rptr. 9, 11–12 (1981).

Petitioner Michael H. asserted before the Supreme Court that, because § 621 made the presumed father's paternity "conclusive" and thereby precluded him as Victoria's natural father from challenging the parental status of the husband of Victoria's mother, his substantive and procedural due process rights were violated. The court rejected these arguments. *Michael H.*, 109 S.Ct. at 2342. The plurality refused to characterize the "presumed father" status created by California law as a mere procedural device:

> We believe this claim derives from a fundamental misconception of the nature of the California statute. While § 621 is phrased in terms of a presumption, that rule of evidence is the implementation of a substantive rule of law. California declares it to be, except in limited circumstances, *irrelevant* for paternity purposes whether a child conceived during and born into an existing marriage was begotten by someone other than the husband and had a prior relationship with him.

(Emphasis in original.) *Michael H.*, 109 S.Ct. at 2340. The plurality found that the "conclusive presumption" in reality reflected a substantive policy choice of the state "that given a certain relationship between husband and wife, the husband is to be held responsible for the child, and that the integrity of the family unit should not be impugned." *Michael H.*, 109 S.Ct. at 2340 (quoting *Vincent B. v. Joan R.*, 126 Cal.App.3d 619, 623, 179 Cal.Rptr. 9, 10 (1981)). *See also Michelle W. v. Ronald W.*, 39 Cal.3d 354, 362–63, 216 Cal.Rptr. 748, 752, 703 P.2d 88, 92 (1985) ("Thus, section 621 does not purport to factually determine the biological paternity of a child.... Here, [plaintiff's] private interest in establishing a biological relationship in a court of law is overridden by the substantial state interests in familial stability and the welfare of the child.").

In my view, the Colorado U.P.A. presumptions should also be recognized as substantive rules of law adopted by the legislature, not as mere evidentiary presumptions. The section 19–4–107 five-year limitation to bring an action to assert nonpaternity reflects a legislature decision that, if the presumed father fails to bring such an action, the presumed father is precluded from challenging his legal obligations of parenthood.[4] It is legally irrelevant after that time whether or not the presumed father is in fact the biological father.

My interpretation of the substantive purpose of section 19–4–107(1) is supported by the comment to § 6 of the U.P.A. (section 19–4–107(1)) which states in relevant part:

> This section consists of two major parts. Subsections (a) and (b) deal with the action to declare or dispute the existence of the father and child relationship presumed under Section 4(a) [19–4–105(1)]. Attack on the presumptions based on marriage or on a relationship between the parents that resembles marriage is restricted to a limited circle of potential contestants and *in point of time*. Presumptions created in other circumstances may be attacked more freely.

(Emphasis added.) Section 19–4–105(1) together with the time limit of section 19–4–107(1) does not establish a set of scientific principles by which the biological connection of father and child most accurately may be proven. A court cannot alter biological facts but, following the statute, it can and does impose legal obligations apart from those facts and in certain instances in

---

4. I note that under section 19–4–105(2), 8B C.R.S. (1988 Supp.), if a court decree establishes the paternity of the child in a man other than the presumed father, then the presumption of paternity is rebutted. My interpretation of the effect of section 19–4–107, which makes such paternity normally unassailable by the presumed father, need not alter this result. It is consistent with legislative policy that a presumed father who has failed to challenge paternity within five years of the birth of the child ought to bear parental obligations unless there is a court determination finding paternity in another man.

the face of them. *See Lehr v. Robertson,* 463 U.S. 248, 261, 103 S.Ct. 2985, 2993, 77 L.Ed.2d 614 (1983).

Construing the five year statute of limitations as not applicable to a defense based on nonpaternity defeats the purposes of the U.P.A. In seeking to avoid what the majority sees as one injustice—the asserted potential for plaintiff mothers or governmental agencies to wait five years before asserting claims against presumed fathers who then are precluded from offering a defense—the majority would open the door to a far greater injustice to the child by subjecting his legitimacy to such a belated challenge. *See generally,* Notes, *Human Leukocyte Antigen Testing: Technology Versus Policy in Cases of Disputed Parentage,* 36 Vand.L.Rev. 1587, 1607 (1983) (urging a 3–year statute of limitations to disprove paternity in order to protect the economic and emotional interests of the child).

I note initially that the majority's concern that a mother or other representative of the child purposely would wait five years before bringing an action to enforce paternity obligations on an unsuspecting presumed father is speculative at best. In any case, the existing doctrine of equitable estoppel would protect against such abuses. *See Strader v. Beneficial Finance Co. of Aurora,* 191 Colo. 206, 551 P.2d 720, at 724 (1976) (where a party by its acts or omissions contributes to the running of a statute of limitations, the doctrine of equitable estoppel will prevent its raising that defense). This respondent has presented no facts which would indicate that the doctrine is applicable. To the contrary, the facts indicate that he was told of the child's birth shortly after it occurred, that he knew he was listed as the baby's father on the birth certificate and that he knew he was not the natural father. Had he wished to contest the child's paternity, he should have done so within the five year statute of limitations. Again, these facts are similar to those in *Clay* where the presumed father knew he was not T.C.'s father but failed to bring a timely action for nonpaternity because he "couldn't afford it" and then decided to raise the issue to avoid paying child support. 397 N.W.2d at 573.

Like the Minnesota Court of Appeals, we too should reject this attempt to circumvent the statute of limitations. Under the holding of the majority, the passing of the statute of limitations becomes irrelevant. Years after the child is born, the presumed father will be free to ignore parental obligations previously unquestioned and to await the bringing of a lawsuit by the mother where he can challenge the child's paternity. There would be little or no incentive for a presumed father to bear the expense of bringing a nonpaternity action if, as the majority holds, he can assert nonpaternity as a defense at any time. With this loophole, the statute of limitations on nonpaternity actions will have no real effect.

While I recognize the common law rule allowing a defendant to assert as a defense what the statute of limitations would preclude him from raising as an affirmative claim, its application is inappropriate here when it would so clearly defeat the legislative purpose of this statute. Following the reasoning of *Michael H.* and *Clay,* I would hold that the presumption of paternity becomes a rule of law after five years have passed. The presumed father is the legal father after that time and must bear the legal obligations that follow from such status.

With respect to the respondent's assertion that denying him the right to raise nonpaternity as a defense in this action would violate the Equal Protection and Due Process Clauses of the state and federal constitutions, those arguments need not be considered because they were not raised at either the district court or at the court of appeals. This court will not consider constitutional issues raised for the first time on appeal. *Colgan v. Dept. of Revenue,* 623 P.2d 871 (Colo.1981). In any event, the challenges seem doubtful in light of the United States Supreme Court's decision upholding California's denial of any right in the natural father to challenge the presumed parental status of the husband of the child's mother. *Michael H.,* 109 S.Ct.

at 2340. *See also Clay,* 397 N.W.2d at 576–77 (upholding, on due process grounds, constitutionality of U.P.A. nonpaternity statute of limitations as applied).

For these reasons, I dissent.